RUFUS C. TAYLOR v. MARGARET J. CRISP, ROY PAYNE, GLEN THOMAS, W. E. MITCHELL, AND FRANK BURNETT, AS MEMBERS OF THE SWAIN COUNTY BOARD OF EDUCATION, AND THE SWAIN COUNTY BOARD OF EDUCATION

No. 85

(Filed 12 March 1975)

1. Schools § 13— teachers — consideration for career status — recommendation of superintendent

G.S. 115-142(m)(2) does not require a board of education to follow the recommendation of the superintendent of schools when it considers the election of career teachers at the end of their third consecutive school year as required by G.S. 115-142(c).

2. Schools § 13— teachers — renewal of probationer's contract — employment of teacher not under contract — recommendation of superintendent

The "recommendation of the superintendent" referred to in G.S. 115-142(m)(2) is advisory only and does not bind the board of education in its consideration of the renewal of a probationer's contract or the employment of a teacher who is not under contract.

Justices COPELAND and EXUM did not participate in the hearing or decision of this case.

ON certiorari to review the decision of the Court of Appeals reversing the judgment of Thornbury, J., entered 17 July 1973 Session of HAYWOOD, docketed and argued at the Fall Term 1974 as Case No. 44.

This action was instituted on 18 May 1973 by plaintiff, principal of the Bryson City Elementary School, against the Swain County Board of Education (the Board) and its individual members to require the Board to renew his contract for the 1973-1974 academic year and to restrain the Board from employing a principal other than himself pending the outcome of this action. In the alternative plaintiff seeks an adjudication that defendants' action in terminating his contract was arbitrary, capricious, and discriminatory for political or personal reasons. He also prays damages against defendants jointly and severally in the sum of $10,000.

Stipulations and admissions establish the following facts:

1. In the year 1966 plaintiff was employed as principal of the Bryson City Elementary School and served continuously in that capacity through the school year 1972-1973.

Taylor v. Crisp

2. On 9 April 1973, at the regular meeting of the Board, the superintendent of schools for Swain County, Thomas Woodard, recommended to the Board that it renew plaintiff's contract as principal of the Bryson City Elementary School for the 1973-1974 school year. Notwithstanding, a majority of the Board voted against renewing plaintiff's contract. Plaintiff had no notice that the renewal of his contract would be considered at the meeting and was given no opportunity to be heard.

3. From and after 1 July 1972 plaintiff and defendants were subject to the provisions of N. C. Gen. Stats. 115-142 (1971 Supp. to N. C. Gen. Stats., Vol. 3A). Under the terms of his contract and G.S. 115-142, from 1 July 1972 through 30 June 1973, plaintiff was "no less than a probationary teacher."

4. Plaintiff holds a teaching certificate which qualifies him to serve as principal in the elementary schools of Swain County.

5. After the Board's decision not to renew plaintiff's contract it offered the position held by plaintiff during the 1972-1973 school year to one Morris A. Herron, subject to the outcome of this action. However, on 25 June 1973, Herron declined the position because of "the contract special condition and the question . . . regarding possible professional ethics infractions with the present principal."

The record discloses that, after plaintiff learned from newspaper accounts that the Board had voted not to renew his contract, on 24 April 1973 he requested the Board in writing to reconsider its action in light of G.S. 115-142 and to accord him an opportunity to be heard after reasonable notice. When that request was ignored this action was instituted. Plaintiff based his claim for relief upon two grounds: (1) that his contract had been illegally terminated without cause and after the superintendent of Swain County Schools had recommended his re-election; and (2) that his dismissal was arbitrary, capricious, and discriminatory, motivated by personal and partisan political considerations, and influenced by false statements which plaintiff was given no opportunity to refute.

Plaintiff's application for a preliminary injunction came on to be heard before Judge Thornburg on 23 June 1973. Upon the facts stipulated, he held that G.S. 115-142(m)(2) required the Board to continue plaintiff in his position as principal. He entered an order requiring the Board to continue plaintiff as principal "until further orders of this Court."

Taylor v. Crisp

On 17 July 1973 plaintiff moved for summary judgment under G.S. 1A-1, Rule 56, and Judge Thornburg heard the matter at that time with the consent of all the parties. Upon the agreed facts he ruled that under G.S. 115-142, the Board could not refuse to renew plaintiff's contract unless the superintendent of schools for Swain County made "an affirmative recommendation" that it not be renewed. Whereupon, he entered judgment that the Board forthwith renew plaintiff's contract as principal of the Bryson City Elementary School for the school year 1973-1974. From this judgment defendant appealed to the Court of Appeals. (We note here that Judge Thornburg did not consider or rule upon plaintiff's second claim for relief.)

On 6 August 1973 plaintiff reported to the court that defendant had (1) failed to renew his contract as the court had directed it to do; (2) refused to sign pay vouchers for the services plaintiff was rendering as principal; and (3) failed and refused to accord plaintiff his rights and privileges as principal. Plaintiff moved the court under G.S. 1A-1, Rules 62 and 70 (1) that defendants be directed to show cause why they should not be held in contempt of court; (2) that a person be appointed to execute in behalf of the Board a teaching contract with plaintiff and to sign the pay vouchers to which plaintiff was entitled for work done; and (3) that the court, pursuant to Rule 62(c), require defendants to accord plaintiff his rights and privileges as principal of the Bryson City Elementary School.

On 6 August 1973 Judge Thornburg ordered defendants to appear before him at 4:00 p.m. on 9 August 1973 and show cause why plaintiff's motion should not be allowed. At the hearing, pursuant to the order to show cause, upon plaintiff's affidavit and the admission of defendants' counsel, the court found the following facts:

(1) Plaintiff had not been paid for his services as principal. (2) After the court had entered its judgment of 17 July 1973, defendants advised plaintiff he was not the principal and ordered him not to go upon the property of the Bryson City Elementary School. (3) On 9 August 1973, prior to 4:00 p.m., defendants deposited with the clerk of the court, "pursuant to G.S. 1-291," the contract which the court had ordered them to execute. This contract contained the special condition that if the North Carolina Court of Appeals reversed the judgment of

Taylor v. Crisp

Judge Thornburg, such a ruling would render the contract null and void.

At the conclusion of the hearing Judge Thornburg accepted the teaching contract filed by defendants as "sufficiently in compliance" with the court's judgment of 17 July 1973 to require its execution by plaintiff. He entered an order that, after plaintiff executed the contract, the parties were bound by its terms in the same manner as if it had been voluntarily executed; that plaintiff should be paid the salary called for in the contract "unless and until the North Carolina Court of Appeals or the North Carolina Supreme Court shall void said contract or otherwise order to the contrary." To safeguard defendants in the event they should prevail upon appeal, plaintiff was ordered to execute an indemnifying bond in the amount of $1,000. On 10 August 1973 plaintiff posted the bond and executed the contract.

The Board and each member thereof appealed to the Court of Appeals, which reversed the decision of the Superior Court in an opinion reported in 21 N.C. App. 359, 205 S.E. 2d 102 (1974). Upon plaintiff's petition we allowed certiorari.

*Adams, Hendon & Carson and Herbert L. Hyde for plaintiff appellant.*

*Coward, Coward, Jones & Dillard for defendant appellees.*

SHARP, Chief Justice.

Prior to 1 July 1972 a teacher's contract continued from year to year unless, before the close of the current school year, the superintendent notified the teacher by registered mail of its termination. G.S. 115-142 [1967 Cum. Supp. to N. C. Gen. Stats., Vol. 3A (1966)]. This statute did "not limit the right of the employer board to terminate the employment of a teacher at the end of a school year to a specified cause or circumstance." Nor did it require the board to notify the teacher of the reason for the termination of his employment or to permit the teacher to appear before the board and be heard. *Still v. Lance,* 279 N.C. 254, 260, 182 S.E. 2d 403, 407 (1971). Dismissals during the school year for cause were governed by G.S. 115-67 and G.S. 115-145. (1966).

By N. C. Sess. Laws, Ch. 883 (1971), effective 1 July 1972 (hereinafter referred to as the Act), the General Assembly re-

wrote G.S. 115-142. Thus, the Board's right to dismiss plaintiff at the end of the school year 1972-1973 by refusing to renew his contract as principal of the Bryson City Elementary School for the year 1973-1974 is governed by the Act. As rewritten, the Act appears in codification form in the Editor's Note to G.S. 115-142 in the 1971 Cumulative Supplement to N. C. Gen. Stats., Vol. 3A (1966).

Pertinent provisions of the Act (cited as sections of G.S. 115-142 as codified in the 1971 Cumulative Supplement) are quoted or summarized below:

§ (a) (3)  " 'Career teacher' means any teacher who has been regularly employed by a public school system for a period of not less than three successive years and who has been re-employed by a majority vote of the board of such public school system for the next succeeding school year."

§ (a) (6)  " 'Probationary teacher' means any teacher employed by a public school system who is not a career teacher."

§ (c)  "Election of Career Teachers.—After a teacher has been employed by the same public school system in this State for a period of three consecutive years, the board of that system is required to vote upon that teacher's employment for the next succeeding year. If a majority of the board votes to reemploy the teacher, he or she becomes a career teacher. *If a majority of the board votes against reemployment of the teacher, the teacher remains a probationary teacher whose rights are set forth in G.S. 115-142(m)(2).* If the board fails to vote, but reemploys the teacher for the next successive year, then the teacher automatically becomes a career teacher. All teachers employed by a public school system of this State at the time this section takes effect who, at the end of last school year, will either have been employed by that school system (or a successor system if the system has been consolidated) for a total of four consecutive years or will have been employed by a public school system of this State for a total of five consecutive years shall automatically be career teachers *if employed for a second year following July 1, 1972.* All other teachers employed by a public school system of this State on July 1, 1972, shall be probationary teachers." (Emphasis added.)

Section (m) deals with the discharge and dismissal of probationary teachers:

"§ (m) (1) The board of any public school system may not discharge a probationary teacher during the school year except for the reasons for and by the procedures by which a career teacher may be dismissed as set forth in subsections (e) and (h) (1) . . .

"§ (m) (2) The board, *upon recommendation of the superintendent,* may refuse to renew the contract of any probationary teacher or to reemploy any teacher who is not under contract *for any cause it deems sufficient;* provided, however, that the cause may not be arbitrary, capricious, discriminatory or for personal or political reasons." (Emphasis added.)

Once a teacher attains the status of "career teacher" he is no longer "subject to the requirement of annual appointment nor shall he or she be dismissed, demoted, or employed on a part-time basis without his or her consent except as provided in subsection (e)." § (d) (1).

Sections (e), (h), (i), (j), (k) and (l) detail the grounds and procedures for the dismissal or demotion of a career teacher.

Section (h) (1) provides: "A board may dismiss or demote a career teacher *only* upon the recommendation of the superintendent." (Emphasis added.)

The parties stipulated that from 1 July 1972 through 30 June 1973 plaintiff was "no less than a probationary teacher," and Section (c) makes it quite clear that he was a probationary teacher. At the end of the school year 1971-72 on June 30, 1972, plaintiff had been employed by the Board for six years. Notwithstanding, he did not automatically become a career teacher on 1 July 1972, the effective date of the Act. Since he was reemployed for the year 1972-73, however, the first school year after the Act went into effect, had he been reemployed for the second school year thereafter (1973-74) he would have become a career teacher on 1 July 1973. Although Section (c) of the Act made this clear enough, the General Assembly "spelled it out" in N. C. Sess. Laws, Ch. 782, § 8 (1973) when it again rewrote G.S. 115-142 (c) (codified in the 1973 Cum. Supp. to N. C. Gen. Stats., Vol. 3A). Rewritten G.S. 115-142 (c) (1973) provides, *inter alia:* "(1) Status of Teachers Employed on July 1, 1972. No teacher may become a career teacher before July 1, 1973. . . ."

---

Taylor v. Crisp

---

Plaintiff contends that, under Section (m) (2), the Board could not refuse to renew the contract of any probationary teacher whom the superintendent had recommended for reemployment; that since the superintendent had recommended the renewal of plaintiff's contract, defendants had no discretion in the matter. The trial judge adopted this view.

The Board's thesis is: After a teacher has served three consecutive years in its system Section (c) *requires* it to vote upon his reemployment for the fourth year and, if a majority of the Board votes to reemploy the teacher he then becomes a career teacher. When the Board considered the renewal of plaintiff's contract on 9 April 1973 the *issue* was whether he should be made a career teacher and the vote to reemploy or dismiss determined the question. This decision was in the sole discretion of the Board, for Section (c) contains no requirement that the Board either consider or follow the recommendation of the superintendent in determining whether a teacher shall be given tenure as a career teacher. Section (m) (2) applies only to the probationary teacher who is being considered for reemployment during the three years before he is eligible for election as a career teacher. The Court of Appeals adopted the Board's view.

The Board further contends that, if this Court should hold Section (m) (2) to have any application to its consideration of the renewal of a probationary's contract when his reemployment will constitute him a career teacher, we should hold the superintendent's recommendation to be advisory only and not binding upon the Board; that whether a probationary teacher shall become a career teacher is a matter within the discretion of the Board; provided, however, the Board may not refuse to renew a contract for "arbitrary, capricious, discriminatory or for personal or political reasons."

[1] Under Section (c) career teachers come from the ranks of probationary teachers, and a probationer can achieve career status only when a majority of the Board votes to reemploy him for the fourth consecutive year. If, therefore (as plaintiff contends), Section (m) (2) forces the Board to reemploy all probationary teachers whom the superintendent recommends for reemployment and to dismiss all whom he recommends for dismissal, the requirement that the Board vote upon the teacher's reemployment when he completes his third consecutive school year becomes meaningless. A board bound to conform to the

superintendent's recommendations is merely a rubber stamp. Had the General Assembly intended to give the superintendent the final word in tenure decisions, it is logical to assume it would have said so in the same positive terms it used in Section (h) (1) when it said: "A board may dismiss or demote a career teacher *only* upon the recommendation of the superintendent." (Emphasis added.) We hold that Section (m) (2) does not require the Board to follow the recommendation of the superintendent when it considers the election of career teachers as required by Section (c).

Plaintiff concedes—and we agree—that "G.S. 115-142 raises difficult questions as to the legislative intent, as to the relative strengths of superintendents and school boards, as to possible inconsistencies in statutory language, and for matters of precedent." This appeal presents one of those difficult questions, that is, what is the fate of the probationary teacher eligible for election as a career teacher on 30 June 1973, whose contract the Board declined to renew? With reference to this situation Section (c) provides: "If a majority of the board votes against the reemployment of the teacher [at the end of his third consecutive school year], the teacher remains a probationary teacher whose rights are set forth in G.S. 115-142 (m) (2)."

Thus, after the Board voted 3-2 not to reemploy plaintiff he remained a probationary teacher. He was, however, a probationer *without a contract* whose rights are as follows: "The board, upon recommendation of the superintendent, may refuse . . . to reemploy any teacher who is not under contract for any reason it deems sufficient; provided, however, that the cause may not be arbitrary, capricious, discriminatory or for personal or political reasons." G.S. 115-142 (m) (2).

It seems incongruous indeed that a probationary teacher whose contract the county board of education had refused to renew for a fourth year should have a *right* to reemployment either with or without the recommendation of the superintendent. Yet if taken literally Sections (c) and (m) (2) would require the Board to reemploy the teacher whose contract it had refused to renew. Upon such a construction, in this case the question would immediately arise, in what capacity would plaintiff be reemployed? Surely not as principal after the Board, the State's agency with the sole authority to employ teachers, had just dismissed him from that position! Would he remain from year to year thereafter as a teacher "not under contract" whom

the Board would have to reemploy as long as the particular superintendent remained in office and continued to recommend him? We cannot believe the General Assembly envisioned such a class of teachers in limbo.

It is fully established that "the language of a statute will be interpreted so as a avoid an absurd consequence. . . . " *State v. Spencer*, 276 N.C. 535, 547, 173 S.E. 2d 765, 773 (1970). Where a literal reading of a statute "will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Freeland v. Orange County*, 273 N.C. 452, 456, 160 S.E. 2d 282, 286 (1968).

The manifest purpose of G.S. 115-142 was to provide teachers of proven ability for the children of this State by protecting such teachers from dismissal for political, personal, arbitrary or discriminatory reasons.

[2] Applying the foregoing rules of construction, and considering the differences in the mandatory language used in Section (h) (1) and the permissive language in Section (m) (2) with reference to the "recommendation of the superintendent," we hold that Section (m) (2) is advisory only. It did not bind the Board in its consideration of the renewal of a probationer's contract or the employment of a teacher who is not under contract. Obviously, a school board is necessarily dependent in large measure upon the superintendent, a professional in direct contact with school personnel, for advice and recommendations with reference to the employment of teachers. Ultimate responsibility for their employment, however, in the absence of a positive legislative mandate to the contrary, rests with the board.

Presumably in recognition of the ambiguity of G.S. 115-142(c), and the untenable situations which might result from it, the General Assembly of 1973 rewrote and clarified the section. As rewritten, the second paragraph of Section (c) (2) provides: "If a majority of the board votes against reemploying the teacher, he shall not teach beyond the current school term. If the board fails to vote on granting career status but reemploys him for the next year, he automatically becomes a career teacher on the first day of the fourth year of employment."

"An amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended, as

where the act amended is ambiguous." 82 C.J.S., *Statutes* § 384 (1953). As we said in *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E. 2d 481, 484 (1968), "Whereas it is logical to conclude that an amendment to an unambiguous statute indicates the intent to change the law, no such inference arises when the legislature amends an ambiguous provision." In such case, the purpose of the variation may be "to clarify that which was previously doubtful." We have no doubt that clarification was the purpose of the 1973 amendment to G.S. 115-142(c).

We hold, as did the Court of Appeals, that the trial court erred when it allowed plaintiff's motion for summary judgment on the ground that under G.S. 115-142 the Board could not refuse to renew plaintiff's contract unless the superintendent recommended that it not be renewed. Plaintiff, therefore, is not entitled to relief as a matter of law upon the undisputed facts in his "First Claim for Relief."

Since the trial judge granted plaintiff's motion for summary judgment (albeit erroneously) upon the grounds set out in his "First Claim," plaintiff's "Second Claim" for the same relief on different grounds was ignored. The grounds for relief alleged in the "Second Claim" were denied in the answer, which raised genuine, material issues of fact.

Accordingly, the decision of the Court of Appeals with reference to the "First Claim" is affirmed, and this cause is remanded to that court with directions that it be returned to the superior court for trial of plaintiff's "Second Claim."

Affirmed and remanded.

Justices COPELAND and EXUM did not participate in the hearing or decision of this case.