LAURIE PRITCHETT, JAMES L. FAGAN AND JOHN D. COOK, PETI-
TIONERS v. PAUL W. CLAPP, HAROLD R. CHEEK, O. H. LEAK,
AND SAMUEL E. BURFORD, AS MEMBERS OF THE BOARD OF EXAMIN-
ERS OF THE HIGH POINT POLICEMEN'S PENSION AND DISABILITY FUND,
CITY OF HIGH POINT AND HIGH POINT BANK AND TRUST
COMPANY, RESPONDENTS

No. 85

(Filed 7 October 1975)

1. Pensions— policemen's pension and disability fund — benefits defined —
disability benefits unrestricted

"Benefits," as that term is used in Section 3 of the Act establish-
ing the High Point Policemen's Pension and Disability Fund, means
the benefits specified in G.S. 128-27, which, *inter alia*, provide for both
service retirement benefits (G.S. 128-27(a)) and unrestricted disability
retirement benefits to qualified members (G.S. 128-27(c)), and under
the latter section, a member's entitlement to disability benefits is not
limited to disability resulting from injury sustained in the actual per-
formance of his duties as a policeman.

2. Pensions— policemen's pension and disability fund — benefits same as
for State Retirement System

In revising Section 3 of an Act to establish the High Point Police-
men's Pension and Disability Fund, the General Assembly intended to

Pritchett v. Clapp

give High Point policemen retirement benefits equal to those provided by the State Retirement System but did not intend to provide discretionary disability benefits for a member injured in the line of duty in addition to disability benefits under G.S. 128-27(c); therefore, Section 4 of the Act providing for such discretionary disability benefits, which was inconsistent with the 1973 revision of Section 3 of the Act, was repealed by Section 7 of the 1973 revision which repealed "all laws and clauses of laws in conflict with the provisions of this Act."

APPEAL by defendants from *Rousseau, J.,* 23 December 1974 Session of GUILFORD County Superior Court, certified for initial appellate review by the Supreme Court of North Carolina pursuant to G.S. 7A-31(a), docketed and argued as Case No. 81 at the Spring Term 1975.

This is a proceeding to obtain judicial review of orders of the Board of Examiners (Board) of the High Point Policemen's Pension and Disability Fund (Fund) denying the application of petitioner Pritchett for disability retirement benefits and terminating benefits previously awarded petitioners Fagan and Cook. The material facts are admitted.

The Fund was established by N. C. Sess. Laws, ch. 496 (1955). This Act was thereafter amended by N. C. Sess. Laws, ch. 825 (1957); N. C. Sess. Laws, ch. 133 (1959); N. C. Sess. Laws, ch. 761 (1971); and N. C. Sess. Laws, ch. 282 (1973). The 1955 Act, *as amended through 1973,* will be hereinafter referred to as the Act.

Petitioners Pritchett, Fagan, and Cook are retired employees of the High Point Police Department. Under Section 5 of the Act, the individual respondents, by virtue of their respective positions, are members of the Board. Paul W. Clapp is Mayor of the City of High Point; Harold R. Cheek is City Manager; Samuel E. Burford is a member of the City Council; and O. H. Leak is the member of the Police Department elected to the Board. Also named as respondents are the City of High Point (admitted to be "a real party in interest") and the High Point Bank and Trust Company, the custodian of the Fund.

Each of the petitioners, at the time of his retirement or application for benefits under the Act, had theretofore been a full-time, paid member of the High Point Police Department with more than five years of creditable service in that capacity, and, had made the contributions to the Fund as required by the Act.

In May 1973 petitioner Fagan applied to the Board for disability retirement benefits because of injuries sustained in the performance of his official duties. On or about 1 July 1973 the Board found that Fagan was entitled to receive disability benefits in the amount of $450.45 per month. This sum was paid to him until 22 November 1974.

In October 1973 petitioner Cook applied to the Board for retirement benefits on account of disability which did not result from injuries sustained in the actual performance of his duties as a policeman. The Board found Cook entitled to disability retirement benefits in the amount of $434.08, and he received this sum each month until 22 November 1974.

On 4 November 1974 petitioner Pritchett applied for disability retirement benefits upon his retirement as chief of police of the City of High Point. On 22 November 1974 the Board denied Pritchett's application for disability retirement on the ground "that the present pension plan of the High Point Police Department does not cover general disability, but only disability from an injury resulting in the actual performance of duty," and Chief Pritchett has not "suffered from an injury incurred in the actual performance of duty."

At the time the Board denied benefits to Pritchett it suspended payments to Fagan and Cook "until such time as full determination is made of their eligibility to receive payments."

In order to understand the present controversy, the history of the Act must be examined in some detail. Prior to 27 April 1973 the right of a member of the High Point Police Department to receive retirement benefits from the Fund was determined by Sections 3 and 4 of the Act which then read as follows:

"Sec. 3. Any person, who is a full-time paid member of the High Point Police Department as shown by the records of the City of High Point at the time of the ratification of this act, or who becomes a full-time paid member thereof after the ratification of this act, and has or shall have a service record of twenty years as full-time paid member of said department and has or shall have reached the age of fifty-five years, or has or shall have attained the age of sixty-five, regardless of the length of his service, shall be eligible for *retirement from service* in the Police Department of the City of High Point and upon

retirement or dismissal from the department shall receive. . . . [specified benefits]" (Emphasis added.)

"Sec. 4. In the event any full-time paid member of the High Point Police Department shall hereafter become, in the opinion of the Board of Examiners, disabled from injury sustained in the actual performance of his duties, and is found by the Board of Examiners to be unable to work as a policeman, he shall receive each month from said Pension Fund during such disability whatever portion of the salary paid him by the City of High Point that the Board of Examiners, in its sole discretion, shall find that he is entitled to receive, after taking into consideration the nature and extent of his disability, his length of service prior to his disability, his income and compensation from all other sources, whether received directly or indirectly, the amount of the Pension Fund, and his ability to earn an income from any other source: Provided, that in no event shall the amount paid under this section exceed $100.00 per month. Provided, further, that in no event shall any compensation be paid him under this Section during such time as his income and compensation from any other source shall equal or exceed the salary paid him by the City of High Point at the time of his disability; and it is further the true intent, meaning and purpose of this act that the Board of Examiners shall be empowered hereunder, in its discretion, to pay any amount less than the maximum enumerated, and said board may refuse to make payment in any amount in any case in any or all the classes herein enumerated under this Section."

Section 3 of the Act was rewritten by N. C. Sess. Laws, ch. 282, § 2 (1973), effective 27 April 1973. The section as amended governed petitioners' rights to benefits on 22 November 1974. It provides:

"Sec. 3. Any person who is a full-time member of the High Point Police Department as shown by the records of the City of High Point at the time of the ratification of this act, or who becomes a full-time paid member thereof after the ratification of this act, shall, *upon his termination from service,* be entitled to receive benefits equal to those he would have received based upon his eligibility under the provisions of Chapter 128 of the General Statutes governing the North Carolina Local Governmental Employees Retirement System, as amended from time to time, had he been a member of that retirement system, exclusive of an employer providing lump sum death benefit. Post retire-

ment benefit increases shall not apply to members retired prior to the ratification of this act except at the discretion of the Board of Examiners." (Emphasis added.)

Although Section 3 was almost completely rewritten by Chapter 282, that Chapter did not mention Section 4 of the Act quoted above. Section 7 of Chapter 282, however, repealed "all laws and clauses of laws in conflict with the provisions" of that Chapter.

Obviously Article 3 of the Act, as amended in 1973, purports to provide that a full-time policeman of High Point is, upon his termination from service, entitled to benefits equal to those he would have received under the statutes regulating the North Carolina Local Governmental Employees Retirement System (State Retirement System) had he been a member of that system. Therefore, certain sections of the statutes regulating the State Retirement System (found in N. C. Gen. Stat., ch. 128, art. 3) are relevant to decision here. These are set forth below:

"§ 128-21(19) 'Retirement' shall mean withdrawal from active service with a retirement allowance granted under the provisions of this Article. . . ."

"§ 128-27. Benefits.— (a) Service Retirement Benefits.—

(1) Any member in service may retire upon written application to the Board of Trustees setting forth at which time, not less than 30 days nor more than 90 days subsequent to the execution and filing thereof, he desires to be retired: Provided, that the said member at the time so specified for his retirement shall have 30 years of service or shall have attained the age of 60 years, or if a uniformed policeman or fireman he shall have attained the age of 55 years, and notwithstanding that, during such period of notification, he may have separated from service." (§ 128-27(b4)) details the method of computing the service retirement allowances for members retiring on or after 1 July 1973.)

"§ 128-27(c) Disability Retirement Benefits.—Upon the application of a member or of his employer, any member who has had five or more years of creditable service may be retired by the Board of Trustees, on the first day of any calendar month, not less than 30 and not more than 90 days next following the date of filing such application, on a disability retirement allowance: Provided, that the medical board, after a medi-

cal examination of such member, shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity was incurred at the time of active employment and has been continuous thereafter, that such incapacity is likely to be permanent, and that such member should be retired." (§ 128-27 (d3)) details the method of computing the disability retirement benefits of persons retiring on or after 1 July 1971.)

When the Board entered its orders on 22 November 1974 denying and terminating their benefits, petitioners promptly sought judicial review in the Superior Court of Guilford County. In their petition they contended:

(1) N. C. Gen. Stat., ch. 128, art. 3, which Section 3 of the Act incorporates, specifically provides for both service retirement benefits and disability benefits which are not limited to disability resulting from injuries sustained in the performance of police duties. (2) Section 3 of the Act, which now determines his right to periodic benefits, declares without restriction or limitation that *upon his termination from service* he is entitled to receive the same benefits to which a member of the State Retirement System with "his eligibility" would be entitled. (3) Section 4 of the Act, which provided for the *discretionary* payment of benefits to members *disabled in the performance of duty,* is inconsistent with Section 3 of the Act as rewritten in 1973. Section 4 was, therefore, repealed by Section 7 of Chapter 282. (4) The Board acted arbitrarily and in disregard of law in denying Pritchett's application and in suspending the benefits previously allowed Fagan and Cook.

When this cause came on to be heard, Judge Rousseau, after marshaling the admitted facts as his findings, made the following conclusions of law: (1) Under Section 3 of the Act all members of the Fund are entitled to all retirement benefits for which G.S. 128-27 provides, including the disability retirement benefits specified in G.S. 128-27 (c). (2) Section 4 of the Act violates the equal protection clauses of both the State and Federal Constitutions in that it provides no "acceptable standards" for determing the benefits "to which members of the Fund injured in the actual performance of duties" would be entitled, and would permit unequal and arbitrary payment of benefits. (3) The Board's action in suspending the payment of disability retirement benefits to Fagan and Cook and in denying Pritchett's application was illegal.

Based upon the foregoing conclusions, Judge Rousseau entered judgment remanding the matter to the Board with directions that it (1) "determine Pritchett's application for disability retirement benefits upon its merits" pursuant to the provisions of the Act and G.S. 128-27; (2) reinstate the disability retirement benefits to which it had previously determined Fagan and Cook entitled and continue paying such benefits "until such time as it shall be determined that he is otherwise subject to an increase or decrease in such benefit"; and (3) pay Fagan and Cook each in a lump sum the total of all monthly benefits withheld by the action of the Board on 22 November 1974.

From the foregoing judgment respondents appealed to the Court of Appeals. Upon the petition of both appellants and appellees, we certified the cases for initial appellate review by the Supreme Court.

*Haworth, Riggs, Kuhn and Haworth for petitioner appellees.*

*Knox Walker for respondent appellants.*

SHARP, Chief Justice.

This appeal presents these questions: Did N. C. Sess. Laws, ch. 282 (1973) incorporate the disability retirement benefits of G.S. 128-27(c) into Section 3 of the Act in addition to the service retirement benefits of G.S. 128-27(a)? If so, does Section 4 of the Act now provide an additional benefit to a member who is disabled from injury sustained in the actual performance of his duties, or is Section 4 in conflict with Section 3, as amended, and therefore repealed by Section 7 of Chapter 282?

Respondent-appellants contend that repeals by implication are not favored, and the legislature manifested its intent to amend Section 3 only with reference to service retirement benefits by its failure to repeal or to mention Section 4. They also contend that the trial judge erred in passing upon the constitutionality of Section 4 when that question was not raised by the parties. Petitioner-appellees make the same contentions here which they made on appeal to the superior court.

As an aid to construction we first consider the history of the Act. As originally enacted by N. C. Sess. Laws, ch. 496 (1955), Section 3 of the Act specified the benefits which members "eligi-

ble for *retirement from service"* were entitled to receive "upon retirement or dismissal."

Section 4 of the Act authorized the Board to pay a monthly disability allowance—the amount to be determined by the Board "in its sole discretion" within specified maximums—for any full-time paid member of the High Point Police Department "disabled from injury sustained in the active performance of his duties," and found by the Board "to be unable to work as a policeman. . . ." In its sole discretion the Board could also "refuse to make payment in any amount in any case. . . ."

Subsequent to 1955 the Act was amended by the enactments listed in the preliminary statement. Until 1973 these amendments involved only changes in the contributions which members of the police force were required to make to the Fund and in the monthly benefits specified by sections 3 and 4. However, after the General Assembly rewrote Section 3 of the Act in 1973, any full-time member of the High Point Police Department, "upon his retirement from service" became entitled to receive *benefits* "equal to those he would have received based upon his eligibility under the provisions of Chapter 128 of the General Statutes governing the North Carolina Local Governmental Employees Retirement System . . . had he been a member of that retirement system." The 1973 enactment (Ch. 282, § 1) also rewrote Section 1(c) of the Act to provide (1) that the monthly deductions from the pay check of every member of the fund "shall at all times conform to the provisions of the North Carolina Local Governmental Employees Retirement System"; and (2) that the city of High Point shall contribute to the Fund on the same basis it contributes to the State Retirement System for its other employees.

[1] The 1973 revision of Section 3 of the Act unequivocally states the legislative intent (1) that any full-time member of the High Point Police Department shall make the same contribution to the Fund which members of the State Retirement System make, and (2) that, upon the termination of his service, a member shall receive from the Fund the same service and disability retirement *benefits* a member of the State Retirement System with his eligibility would receive from the State Retirement Fund. Thus, we hold that "benefits," as that term is now used in Section 3 of the Act, means the benefits specified in G.S. 128-27, which, *inter alia,* provides for both service retire-

ment benefits (G.S. 128-27(a)) and *unrestricted* disability re-
tirement benefits to qualified members (G.S. 128-27(c)). Under
the latter section, a member's entitlement to disability benefits
is not limited to disability resulting from injury sustained in
the actual performance of his duties as a policeman as it was
under Section 4 of the Act.

Had the General Assembly, when it rewrote Section 3 in
1973, intended to limit Section 3 benefits to service retirement
benefits under G.S. 128-27(a), it is inconceivable that it would
not have restricted the term *benefits*. It would have modified
that term by the adjective phrase "service retirement" or it
would have specifically excluded disability benefits under G.S.
128-27(c) just as it excluded "employer providing lump sum
death benefit." Further, the use of the all-embracing phrase "ter-
mination from service" as rewritten in Section 3 of the Act
manifests the legislative intent to encompass any cessation of
employment. It includes resignation, discharge, disability and
service retirement.

[2]  It is quite true, as heretofore pointed out, that when Sec-
tion 3 was rewritten in 1973, Chapter 282 made no reference to
Section 4 of the Act. However, by Section 7, Chapter 282 re-
pealed "all laws and clauses of laws in conflict with the provi-
sions of this Act." In our view Section 4 is totally inconsistent
with the 1973 revision of Section 3 of the Act and it was, there-
fore, repealed by Section 7 of Chapter 282, quoted above. Of
course, a clause specifically repealing Section 4 would have been
preferable, but sometimes even Solons nod. Sections 3 and 7 of
Chapter 282 leave no doubt that the legislative purpose was
to give High Point policemen retirement benefits equal to those
provided by the State Retirement System and no more. We do
not for a moment entertain the idea that the legislature ever
intended to provide discretionary disability benefits under Sec-
tion 4 for a member injured in the line of duty in addition to
disability benefits under G.S. 128-27(c).

Thus, we hold that this Section (N. C. Sess. Laws, ch. 496,
§ 4 (1955)), as amended, was repealed by N. C. Sess. Laws, ch.
282 § 7 (1973). Our conclusion that this was the intent of the
General Assembly is bolstered by its enactment of N. C. Sess.
Laws, ch. 691 (1975) (effective 25 June 1975). Section 5 of this
enactment specifically repealed Section 4 of the Act, and Section
4 of the 1975 enactment amended Section 3 of the Act so that

the Act now specifically provides benefits, "including both service retirement and disability retirement." Where the Act amended is ambiguous, the amendment "may be resorted to for the discovery of the legislative intention in the enactment amended." *Taylor v. Crisp*, 286 N.C. 488, 212 S.E. 2d 381 (1975); *Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E. 2d 481 (1968).

Our construction of N. C. Sess. Laws, ch. 282 (1973) makes it unnecessary to decide whether the judge correctly considered or decided the constitutionality of Section 4 of the Act.

For the reasons stated herein the judgment of the Superior Court is

Affirmed.