IN THE MATTER OF: THE PROPOSED ASSESSMENTS OF ADDITIONAL SALES AND USE TAX FOR THE PERIOD OF JANUARY 1, 1994 THROUGH NOVEMBER 30, 1996 BY THE SECRETARY OF REVENUE, Petitioner v. JEFFERSON-PILOT LIFE INSURANCE CO., Respondent

No. COA02-1591

(Filed 16 December 2003)

**Taxation— use taxes—insurance company exemption**

The trial court correctly ruled that Jefferson-Pilot is liable for a use tax, and reversed the Tax Review Board, where Jefferson-Pilot contended that N.C.G.S. § 105-228.10 prior to its 1998 amendment unambiguously forbade assessment of a local use tax against insurance companies. However, the construction given to this statute by the N.C. Supreme Court and the General Assembly supports a contrary view. Identical language was supported by the N.C. Supreme Court more than a century ago to make insurance companies liable for local use taxes, and legislative enactments since then have embraced that ruling. Moreover, the ruling urged by Jefferson-Pilot would produce an absurd result.

Judge TYSON dissenting.

Appeal by respondent from judgment entered 6 August 2002 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 7 October 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Kay Linn Miller Hobart, for the State.*

*C.B. McLean, Jr., for respondent-appellant.*

LEVINSON, Judge.

Respondent appeals from a judgment reversing Administrative Decision No. 361 of the Tax Review Board and ruling that respondent is liable for the disputed local use tax. We affirm.

**IN RE PROPOSED ASSESSMENTS v. JEFFERSON-PILOT LIFE INS. CO.**

[161 N.C. App. 558 (2003)]

The relevant facts are not disputed, and may be briefly summarized as follows: Jefferson-Pilot Life Insurance Company is engaged in business as an insurance company and paid gross premiums tax pursuant to Article 8B of Chapter 105 of the North Carolina General Statutes between 1 January 1994 and 30 November 1996 ("the relevant period"). When Jefferson-Pilot made purchases within this State, the company paid state and local sales tax on those purchases pursuant to Articles 5, 39, 40, and 42 of Chapter 105 of the North Carolina General Statutes.

During the relevant period, Jefferson-Pilot purchased tangible personal property outside of this State for storage, use, or consumption in this State. The company did not pay state or local use tax with respect to these purchases. The Department of Revenue issued a proposed notice of tax assessment against Jefferson-Pilot for state and local use taxes for the period of 1 January 1994 through 30 November 1996. Jefferson-Pilot paid the State use tax, but contested liability for local use tax on the ground that N.C.G.S. § 105-228.10, as it existed at the time of the proposed assessment, prohibited the assessment of local use taxes against insurance companies. The Assistant Secretary sustained the proposed assessment. On appeal, the Tax Review Board reversed, ruling against the proposed assessment. The State petitioned for review in superior court; the trial court reversed the Tax Review Board and ruled that Jefferson-Pilot is liable for the proposed use tax.

Jefferson-Pilot now appeals, contending that the trial court misconstrued the following statutory provision:

> No county, city, or town shall be allowed to impose any additional tax, license, or fee, other than ad valorem taxes, upon any insurance company or association paying the [gross premiums tax on insurers].

N.C.G.S. § 105-228.10 (1997) (amended 1998). Jefferson-Pilot insists that the plain language of this statute prohibited local use taxes from being assessed against insurance companies. Thus, the central issue in this case is the meaning of the pre-1998 version of G.S. § 105-228.10.

Questions of statutory interpretation are questions of law, which are reviewed *de novo* by an appellate court. *Dare County Bd. of Educ. v. Sakaria*, 127 N.C. App. 585, 588, 492 S.E.2d 369, 371 (1997). In conducting this review, we are guided by the following principles of statutory construction.

The paramount objective of statutory interpretation is to give effect to the intent of the legislature. *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998). The primary indicator of legislative intent is statutory language; the judiciary must give "clear and unambiguous" language its "plain and definite meaning." *Begley v. Employment Sec. Comm'n*, 50 N.C. App. 432, 436, 274 S.E.2d 370, 373 (1981). However, strict literalism will not be applied to the point of producing "absurd results." *Taylor v. Crisp*, 286 N.C. 488, 496, 212 S.E.2d 381, 386 (1975).

When the plain language of a statute proves unrevealing, a court may look to other indicia of legislative will, including: "the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means[.]" *State v. Green*, 348 N.C. 588, 596, 502 S.E.2d 819, 824 (1998) (citation omitted). The intent of the General Assembly may also be gleaned from legislative history. *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001). Likewise, "[l]ater statutory amendments provide useful evidence of the legislative intent guiding the prior version of the statute." *Wells v. Consol. Judicial Ret. Sys.*, 354 N.C. 313, 318, 553 S.E.2d 877, 880 (2001).

Statutory provisions must be read in context: "Parts of the same statute dealing with the same subject matter must be considered and interpreted as a whole." *State ex rel. Comm'r of Ins. v. N.C. Auto. Rate Admin. Office*, 294 N.C. 60, 66, 241 S.E.2d 324, 328 (1978). "Statutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law, and harmonized to give effect to each." *Williams v. Williams*, 299 N.C. 174, 180-81, 261 S.E.2d 849, 844 (1980) (internal citations omitted).

Tax statutes "are to be strictly construed against the State and in favor of the taxpayer." *Watson Industries, Inc. v. Shaw*, 235 N.C. 203, 211, 69 S.E.2d 505, 511 (1952). In arriving at the true meaning of a taxation statute, the provision in question must be considered in its appropriate context within the Revenue Act. *See Insurance Co. v. Stedman*, 130 N.C. 221, 223, 41 S.E. 279, 280 (1902) ("Taking all the [relevant] sections of the Revenue Act of 1901 together" to arrive at an interpretation of a section of the act). The interpretation of a revenue law adopted by the agency charged with its enforcement is a significant aid to judicial interpretation of the same provision; however, "[u]nder no circumstances will the courts follow an administrative

interpretation in direct conflict with the clear intent and purpose of the act under consideration." *Watson Industries, Inc.*, 235 N.C. at 211, 69 S.E.2d at 511.

We turn now to application of these principles to the present case, which requires our examination of the statutory provisions governing the taxes at issue: (1) the local use tax, and (2) the gross premiums tax on insurance companies.

The use tax is an excise tax which is the counterpart of the sales tax. *See Johnston v. Gill*, 224 N.C. 638, 643-44, 32 S.E.2d 30, 33 (1944) (discussing the State use tax). N.C.G.S. § 105-467 (2003) authorizes local governments in this State to levy a sales tax on certain purchases. N.C.G.S. § 105-468 (2003) authorizes local governments to charge a use tax on "[an] item or article of tangible personal property that is not sold in the taxing county but is used, consumed, or stored for use or consumption in the taxing county." G.S. § 105-468 explicitly provides that "[t]he [use] tax applies to the same items that are subject to [sales] tax under G.S. [§] 105-467." The use tax is designed to prevent unfair competition, which may result where a purchaser can evade the local sales tax by purchasing in a locality which does not charge sales tax and then make use of the purchased property in a locality which does charge the sales tax. *See Johnston*, 224 N.C. at 644, 32 S.E.2d at 33. The sales and the use tax, "taken and applied together, provide a uniform tax upon either the sale or use of all tangible personal property irrespective of where it may be purchased. That is, the sales tax and the use tax are complementary and functional parts of one system of taxation." *Id.*

Where a locality chooses to assess local sales and use taxes, G.S. § 105-467(b) requires their assessment absent an exemption which the General Assembly has made applicable to State sales and use tax: "A taxing county may not allow an exemption, exclusion, or refund that is not allowed under the State sales and use tax." Jefferson-Pilot enjoys no exemption from the State use tax; therefore, absent some other controlling statute, it is liable for local use taxes.

Jefferson-Pilot contends that its exemption derives from the special system of taxation that applies to insurance companies: the gross premiums tax. N.C.G.S. § 105-228.5(b)(1) (2003) provides that "[t]he tax imposed . . . on an insurer . . . shall be measured by gross premiums from business done in this State during the preceding calendar year." Because they are subject to the gross premiums tax, subsection (a) exempts insurers from other types of taxes: "An insurer . . . that is

subject to the [gross premiums tax] is not subject to franchise or income taxes imposed by Articles 3 and 4, respectively, of this Chapter [105]." It is clear that the gross premiums tax also restricts the imposition of some local taxes; for the purposes of the instant case, it is relevant that the pre-1998 version of G.S. § 105-228.10, titled "No additional local taxes," set forth the following prohibition:

> No county, city, or town shall be allowed to impose any additional tax, license, or fee, other than ad valorem taxes, upon any insurance company or association paying the fees and taxes levied in this Article [governing taxes on insurers].

Jefferson-Pilot contends that the quoted version G.S. § 105-228.10, which was effective during the relevant period, unambiguously forbade the assessment of local use tax against insurance companies. After careful examination of the relevant statutes and cases, we do not agree. Though it is possible the pre-1998 version of G.S. § 105-228.10, read in isolation and out of context, seemingly shielded insurance companies from liability for local use taxes, the construction given to this statute by our General Assembly and Supreme Court supports a contrary view. To hold as Jefferson-Pilot urges would require us to ignore clear indicia of legislative intent and to adopt an interpretation of the statute which produces an absurd result.

The identical language at issue in the present case was interpreted by the North Carolina Supreme Court more than a century ago in such a way as to make insurance companies liable for local use taxes. In 1901, the predecessor of G.S. § 105-228.10 contained the following language: "Companies paying the taxes levied in this section shall not be liable for tax on their capital stock, and no county or corporation *shall be allowed to impose any additional tax, license or fee.*" (emphasis added). The North Carolina Supreme Court interpreted that provision as follows:

> The defendant insists that the proper construction of section 78, it being under Schedule B, is that all of the taxes mentioned therein constitute a privilege or license tax; that no tax can be collected or assessed against the capital stock of the company, because the section prohibits such a tax; and that *no county or corporation can assess or collect any other privilege tax, but that the personal and real property of the company is taxable.* We are of opinion that the defendant's position is the true one.

*Insurance Co.*, 130 N.C. at 222-23, 41 S.E. at 280 (emphasis added). Thus, the language at issue in this case has been held to prohibit only privilege taxes. *Id.*

Legislative enactments made in light of the holding in *Insurance Co.* have embraced the rule it established. In 1945, the words "other than *ad valorem* taxes" were added to the existing version of G.S. § 105-228.10. 1945 N.C. Sess. Laws ch. 752, § 2. Jefferson-Pilot alleges that the four words added in 1945 significantly altered the meaning of the statute. This proposition is dubious, however, in light of the change that was made. The legislature is presumed to act with full and complete knowledge of prior and existing law. *State ex rel. Utilities Com. v. Thornburg*, 84 N.C. App. 482, 485-86, 353 S.E.2d 413, 415 (1987). Therefore, we must assume that the legislature was aware that the predecessor to G.S. § 105-228.10 had been construed to forbid only privilege taxes. *See id.* By adding the phrase "other than *ad valorem* taxes" while making no other substantive changes, the legislature apparently wished to codify the rule set forth by the North Carolina Supreme Court that local governments could tax the property of insurance companies.

Subsequent action by the General Assembly reveals that it did not consider G.S. § 105-228.10 to be inconsistent with the assessment of the local use tax: the 1945 amendment co-existed for some period of time with a provision which expressly provided that insurance companies were subject to local sales and use taxes. In 1957, G.S. § 105-228.5 was amended to provide as follows:

> The taxes levied herein measured by premiums shall be in lieu of all other taxes upon insurance companies except: . . . taxes imposed by Article 5 of Chapter 105 of the General Statutes of North Carolina as amended. . . .

1957 N.C. Sess. Laws ch. 1340, § 12. Article 5 of Chapter 105 governed State sales and use taxes in 1957. In 1969, Article 5 of Chapter 105 was amended to include the "Local Option Sales and Use Tax Act." 1969 N.C. Sess. Laws c. 1228. At that time, G.S. § 105-228.5 still required insurance companies to pay the taxes levied in Article 5. Thus, in 1969, the General Assembly expressly made insurance companies subject to state and local use taxes. The subsequent removal of the local sales and use taxes from Article 5 have in no way affected the liability of insurance companies for local use taxes because those changes were unrelated to the taxation of insurance companies, and the parallel structure of the State and local sales and use tax schemes

indicates that the legislature intended for insurance companies to pay local use taxes.

In 1971, the North Carolina Supreme Court declared the Local Option Sales and Use Tax Act to be unconstitutional. *Hajoca Corp. v. Clayton*, 277 N.C. 560, 178 S.E.2d 481 (1971). The General Assembly repealed that act and enacted the current local government sales and use taxes in Articles 39, 40 and 42. 1971 N.C. See. Laws, c. 77, s. 1 and s. 2. Insurance companies are not specifically exempted from the local use taxes in any of these articles. Moreover, exemptions from local use taxes are explicitly limited to and made dependent on the existence of codified exemptions from the State sales and use taxes. N.C.G.S. § 105-467 and 68 (2003). In N.C.G.S. § 105-164.13, the legislature has meticulously set forth approximately fifty exemptions and exclusions to the States sales and use taxes, many of which are subcategorized by industry. Nowhere in G.S. § 105-164.13 are insurance companies exempted from State sales and use tax. Thus, local use taxes are generally applicable, and the General Assembly did not intend to make them inapplicable to insurance companies.

Recent amendments make it clear that insurance companies are currently responsible for local use taxes. *See* 1998 N.C. Sess. Laws. ch. 98, § 18. In 1998, G.S. § 105-228.10 was amended to provide:

> No city or county may levy on a person subject to the tax levied in this Article [the gross premiums tax] a privilege tax or a tax computed on the basis of gross premiums.

"In construing a statute with reference to an amendment it is presumed that the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it." *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968). In light of the following information, we conclude that the 1998 changes were made to clarify the law that existed prior to the amendments: (1) Senate Bill 1226, which proposed the 1998 changes, indicated that it was proposing "technical and conforming changes to the revenue laws," and (2) the 1998 amendment merely codified the common law interpretation which had been in existence for nearly a century.

Even if we were to ignore the strong evidence of legislative intent, we would still be compelled to read G.S. § 105-228.10 as we have because the reading urged by Jefferson-Pilot would produce an absurd result. *See Taylor*, 286 N.C. at 496, 212 S.E.2d at 386 (holding that statutes may not be read in such a way as to produce an absurd result). Under Jefferson-Pilot's proffered interpretation of G.S.

IN RE PROPOSED ASSESSMENTS v. JEFFERSON-PILOT LIFE INS. CO.

[161 N.C. App. 558 (2003)]

§ 105-228.10, it is still liable for local sales tax but not for local use tax. This result cannot obtain where the General Assembly has made local sales and use taxes companion parts of the same taxation scheme, and has made the local use tax applicable to the same category of items to which the sales tax applies. *See* G.S. § 105-467; *Johnson*, 224 N.C. at 644, 32 S.E.2d at 32 (discussing State sales tax).

The assignments of error are, therefore, overruled.

Affirmed.

Judge WYNN concurs.

Judge TYSON dissents.

TYSON, Judge dissenting.

I respectfully dissent from the majority's opinion.

## I. Issue

The issue before this Court is whether the trial court erred in concluding that N.C. Gen. Stat. § 105-228.10 does not prohibit North Carolina counties, cities, or towns from imposing local use taxes upon insurance companies who pay gross premium taxes under this statute prior to its amendment in 1998.

## II. Standard of Review

When reviewing appeals from an administrative agency, "the proper standard of review to be employed by the [trial] court depends upon the nature of the alleged error." *Dorsey v. UNC-Wilmington*, 122 N.C. App. 58, 62, 468 S.E.2d 557, 559 (1996) (quoting *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994)).

If a petitioner asserts that the administrative agency decision was based on an error of law, then 'de novo' review is required. 'De novo' review requires a court to consider a question anew, as if not considered or decided by the agency. The court may freely substitute its own judgment for that of the agency.

On the other hand, if a petitioner asserts that the administrative agency decision was not supported by the evidence, or was arbitrary or capricious, then the court employs the 'whole record' test. The 'whole record' test requires the court to examine all

competent evidence comprising the 'whole record' in order to ascertain if substantial evidence therein supports the administrative agency decision.

*Id.* at 62, 468 S.E.2d 559-60 (internal citations omitted). "The standard of review for an appellate court upon an appeal from an order of the superior court affirming or reversing an administrative agency decision is the same standard of review as that employed by the superior court." *Id.* at 62-63, 468 S.E.2d at 560 (quoting *In re Appeal of Ramseur*, 120 N.C. App. 521, 463 S.E.2d 254 (1995)). Where the position of a petitioner is "not clear," this Court, in its discretion, undertakes a *de novo* review of the agency's conclusions of law, as well as a review of the "whole record" to determine whether evidence supports the agency's action. *Davis v. N.C. Dept. of Human Resources*, 110 N.C. App. 730, 735, 432 S.E.2d 132, 134-35 (1993).

Here, the trial court applied a *de novo* standard of review and the "whole record" test in making its findings of fact and conclusions of law. Jefferson-Pilot contends that the trial court's order is: (1) affected by errors of law; (2) not supported by competent, material, and substantial evidence in the record; and (3) arbitrary and capricious. At bar, we should apply a *de novo* standard of review and the "whole record" test in reviewing that agency's decisions. *Id.*

## III.  N.C. Gen. Stat. § 105-228.10

This case arises under N.C. Gen. Stat. § 105-228.10 prior to its amendment in 1998. The statute read:

No county, city, or town shall be allowed to impose any additional tax, license or fee, other than ad valorem taxes, upon any insurance company or association paying the fees and taxes levied in this Article.

N.C. Gen. Stat. § 105-228.10 (1945). N.C. Gen. Stat. § 105-228.10 (2001) now reads:

No city or county may levy on a person subject to the tax levied in this Article a privilege tax or a tax computed on the basis of gross premiums.

The paramount objective of statutory interpretation is to give effect to the intent of the legislature. *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998). Our Supreme Court has held that "[w]hen the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded by an

**IN RE PROPOSED ASSESSMENTS v. JEFFERSON-PILOT LIFE INS. CO.**

administrative body or a court under the guise of construction." *Utilities Comm. v. Edmisten, Atty. General*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1976) (citations omitted).

This Court has held "[w]here the language of a statute is clear and unambiguous there is no room for judicial construction and the courts must give it its plain and definite meaning . . . ." *Begley v. Employment Security Comm.*, 50 N.C. App. 432, 436, 274 S.E.2d 370, 373 (1981) (citations omitted). "[T]he Court is without power to interpolate or superimpose conditions and limitations which the statutory exception does not of itself contain." *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670-71 (1969) (quoting *Board of Architecture v. Lee*, 264 N.C. 602, 142 S.E.2d 643 (1965)).

This Court has further held that "although courts are the final interpreters of statutory terms, 'the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference.' " *Best v. N.C. State Board of Dental Examiners*, 108 N.C. App. 158, 162, 423 S.E.2d 330, 332 (1992) (quoting *Savings and Loan League v. Credit Union Comm'n*, 302 N.C. 458, 466, 276 S.E.2d 404, 410 (1981)).

The scope of administrative review for petitions filed with the North Carolina Tax Review Board ("Tax Review Board") is governed by N.C. Gen. Stat. § 105-241.2(b2) (2001). After the Tax Review Board conducts a hearing, this statute provides in pertinent part: "The Board shall confirm, modify, reverse, reduce, or increase the assessment or decision of the Secretary . . . ." *Id.*

This matter was twice appealed to and heard by the Tax Review Board, chaired by Harlan E. Boyles, State Treasurer, with Ms. Jo Anne Sanford, Chair of the Utilities Commission, and Noel L. Allen, Attorney at Law, Adjunct Professor at Norman Adrian Wiggins School of Law at Campbell University, participating. The Tax Review Board is a statutory body charged to hear sales and use tax appeals. Its members possess detailed and specialized knowledge of the Revenue statutes. After the first hearing, the Tax Review Board found that the Secretary of Revenue erred in concluding that N.C. Gen. Stat. § 105-228.10 did not grant a specific exemption to insurance companies from liability for local sales and use taxes. The Tax Review Board remanded the matter to the Secretary for further consideration based on the Tax Review Board's findings.

On remand, the Secretary disagreed with the Tax Review Board and again found that the statute did not grant a specific exemption. The Tax Review Board heard the matter for the second time and again ruled that the Secretary had erred.

The Tax Review Board held that N.C. Gen. Stat. § 105-228.10 was clear and unambiguous in prohibiting additional local taxes, "other than *ad valorem* taxes," from being imposed upon insurance companies who pay taxes solely on gross premiums. Although the Tax Review Board's ruling is not binding upon this Court, we should give its decision deference in reaching our decision given the specialized knowledge and power given to the Tax Review Board under N.C. Gen. Stat. § 105-241.2(b2). *Best,* 108 N.C. App. at 162, 423 S.E.2d at 332.

Here, the language of N.C. Gen. Stat. § 105-228.10, prior to its amendment, clearly and unambiguously prohibited the imposition of additional taxes, "other than *ad valorem* taxes," upon insurance companies who paid the gross premiums tax. N.C. Gen. Stat. § 105-228.10 (1945). The 1998 amendment to N.C. Gen. Stat. § 105-228.10 substantively changed this prohibition against additional taxes, including local use taxes, by limiting the prohibition to "a privilege tax or a tax computed on the basis of gross premiums." N.C. Gen. Stat. § 105-228.10 (2001). It is undisputed that the General Assembly substantively narrowed the statute by omitting the exemption from local use or other taxes previously granted to· insurance companies by enacting the 1998 amendment.

The majority's opinion relies on *Wilmington Underwriter Ins. Co. v. Stedman* to support its conclusion that the "identical" language of N.C. Gen. Stat. § 105-228.10 was interpreted under its predecessor statute by our Supreme Court and held to mean that insurance companies are only exempted from privilege taxes, not local use taxes. 130 N.C. 155, 41 S.E. 279 (1902). *Wilmington Underwriter Ins. Co.,* however, was decided over 100 years ago when the entire statutory scheme of state and local taxation was far different from what exists today. In 1902, the General Assembly had not delegated any authority to cities, towns, or counties for the imposition of local sales and use taxes, and individual state income taxes were not levied. The language at issue in *Wilmington Underwriter Ins. Co.* dealt specifically with local taxes on capital stock, not local sales and use taxes. Delegation of the power to impose local sales and use taxes was not enacted until 1971. *See* N.C. Gen. Stat. § 105-467 (2001); N.C. Gen. Stat. § 105-468 (2001). As taxes on capital stock were the only taxes

at issue in *Wilmington Underwriter Ins. Co.*, the reliance on this case in the majority's opinion is misplaced.

The majority's opinion contends that the addition of the phrase "other than *ad valorem* taxes" to N.C. Gen. Stat. § 105-228.10 in 1945 shows the General Assembly's intent to codify the holding of *Wilmington Underwriter Ins. Co.* issued forty-three years earlier. I disagree. The addition of this phrase significantly altered the meaning of the statute from its original text. By adding this phrase, the General Assembly made it clear that under N.C. Gen. Stat. § 105-228.10, counties, cities, and towns were prohibited from imposing *any* additional taxes, "other than *ad valorem* taxes," upon insurance companies who pay gross premium taxes. N.C. Gen. Stat. § 105-228.10 (2001).

In *Watson Industries v. Shaw, Comr. of Revenue*, our Supreme Court reviewed a different revenue statute and stated,

[t]ax statutes are to be strictly construed against the State and in favor of the taxpayer.

In the interpretation of statutes levying taxes, *it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out.* In case of doubt they are construed most strongly against the government, and in favor of the citizen.

235 N.C. 203, 211-12, 69 S.E.2d 505, 511-12 (1952) (emphasis supplied) (internal citations omitted).

In *Childers v. Parker's Inc.*, our Supreme Court interpreted a statute which had been subsequently amended. Justice Sharp wrote,

[i]n construing a statute with reference to an amendment it is presumed that the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it. The presumption is that the legislature intended to change the original act by creating a new right or withdrawing any existing one.

274 N.C. 256, 260, 162 S.E.2d 481, 483 (1968) (internal citations omitted). In *Phillips v. Phillips*, Justice Sharp similarly wrote, "[w]hile the purpose of an amendment to an ambiguous statute may be presumed to be to clarify that which was previously doubtful, it is logi-

cal to infer that an amendment to an unambiguous provision . . . evinces an intent *to change* the law." 296 N.C. 590, 597, 252 S.E.2d 761, 766 (1979) (citations omitted).

The language of N.C. Gen. Stat. § 105-228.10, prior to the 1998 amendment, is clear and unambiguous in prohibiting "any additional tax, license, or fee, other than *ad valorem* taxes," from being imposed upon insurance companies who solely and alternatively pay gross premium taxes. N.C. Gen. Stat. § 105-228.10 (1945) A plain comparison of the text of N.C. Gen. Stat. § 105-228.10, before and after the 1998 amendment, shows that the 1998 amendment eliminated the prohibition against the levy of local use taxes by limiting the prohibition to "a privilege tax or a tax computed on the basis of gross premiums." N.C. Gen. Stat. § 105-228.10 (2001).

As the plain language of N.C. Gen. Stat. § 105-228.10 is unambiguous, it is "logical to infer that an amendment to [this] unambiguous provision . . . evinces an intent *to change* the law," not clarify it. *Phillips*, 296 N.C. at 597, 252 S.E.2d at 766. The General Assembly amended N.C. Gen. Stat. § 105-228.10 in 1998 to further limit the exemption to insurance companies from imposition of additional local taxes. *Childers*, 274 N.C. at 260, 162 S.E.2d at 483. The majority's opinion construes plain statutory language that is neither unclear nor ambiguous. I defer to the specialized knowledge and decision of the Tax Review Board. I respectfully dissent.