NO. COA13-602

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

NANNY'S KORNER CARE CENTER BY
BERNICE M. CROMARTIE, CEO,
    Petitioner,

    v.                                    Wake County
                                          No. 12 CVS 005438
NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES —
DIVISION OF CHILD DEVELOPMENT,
    Respondent.


Appeal by petitioner from order entered 9 January 2013 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 10 October 2013.

*George Ligon, Jr., for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Alexandra Gruber, for the State.*


HUNTER, JR., Robert N., Judge.

Petitioner Nanny's Korner Care Center by Bernice M. Cromartie, CEO ("Petitioner") appeals from an order affirming the Final Agency Decision of Respondent North Carolina Department of Health and Human Services ("DHHS") in which DHHS issued a written warning to Petitioner's child care center and prohibited Petitioner's husband from being on the child care

center's premises while children are on site. Petitioner contends that the superior court erred in concluding that DHHS could rely on a substantiation of abuse made by a local Department of Social Services to invoke its disciplinary authority under N.C. Gen. Stat. § 110-105.2(b). We agree.

## I. Factual & Procedural History

Bernice Cromartie ("Mrs. Cromartie") is the CEO and President of Nanny's Korner Care Center ("Nanny's Korner"), a child care facility located in Lumberton, operating pursuant to a license issued by the Division of Child Development and Early Education ("the Division") within DHHS. Ricky Cromartie ("Mr. Cromartie"), Mrs. Cromartie's husband, was a lead teacher at Petitioner's facility and was also responsible for performing janitorial and maintenance work at the facility.

On 5 November 2009, the Division received a report that an eight-year-old girl who was enrolled with Petitioner had complained that a staff member at Nanny's Korner had touched her inappropriately. On that same day, Sharon Miller ("Ms. Miller"), an abuse and neglect consultant with the Division, along with a social worker from the Robeson County Department of Social Services ("DSS") began to investigate the allegations in the report. Ms. Miller and the DSS social worker visited the

complainant's school and spoke with the minor child's guidance counselor and teacher. They then visited the minor child's home and interviewed the complainant, her three-year-old sibling, and the complainant's mother.

Ms. Miller and the DSS social worker next visited Nanny's Korner and interviewed Mr. and Mrs. Cromartie, as well as several staff members. Ms. Miller learned that, on occasion, Mr. Cromartie had been "the sole caregiver for the children after [another staff member's] shift ended at eight-thirty p.m." Mrs. Cromartie was adamant that the allegations against her husband were false and upset that her husband was being accused of such conduct. Mr. Cromartie denied inappropriately touching the complainant.

According to Ms. Miller, in order to ensure the safety of affected children during the pendency of an investigation into allegations of child abuse or neglect, the Division typically enters into a "protection plan" with the provider or owner of the facility under investigation. Such a protection plan identifies rules to which the provider or owner agrees to adhere during the course of the investigation. In the present case, on 6 November 2009, Mrs. Cromartie was informed of, and agreed to, a protection plan which provided, in relevant part, that "Mr.

Ricky Cromartie can not [sic] and will not be on the premises of the child care center during normal business hours . . . and therefore . . . will not be present while children are present." Ms. Miller made subsequent visits to Nanny's Korner in December 2009 and again in January 2010 in order to monitor Petitioner's compliance with the protection plan.

On 2 February 2010, Ms. Miller received notice that the local DSS had concluded its investigation and had substantiated the allegations of sexual abuse against Mr. Cromartie. Two days later, on 4 February 2010, Ms. Miller submitted a Case Decision Summary to her supervisor containing the results of the Division's investigation into the allegations of sexual abuse made against Mr. Cromartie. In this Case Decision Summary, Ms. Miller noted that DSS had substantiated that Ricky Cromartie inappropriately touched a child being cared for at Nanny's Korner and recommended issuance of a special provisional license to Nanny's Korner. The Case Decision Summary also indicated that, in making its determination, the Division considered the following "other factors": "The male staff member submitted to a polygraph test and passed with no deception. No criminal charges were filed. No indication that any other staff were

involved/aware of the incidents. Protection plan implemented during the initial visit."

Since changing the status of Petitioner's license to a special provisional license "would have resulted in changing the star [rating of the facility]," the Division's Internal Review Panel met in March 2010 to discuss the issuance of a proposed special provisional license and to give Petitioner an opportunity to explain in writing why she believed the Division should not take such action. After meeting for a second time in June 2010 and considering Petitioner's compliance with the corrective action plan in place at Nanny's Korner, the Division's Internal Review Panel reduced the administrative action to a written warning. However, Mr. Cromartie was still prohibited from being on the premises of Nanny's Korner while children were present. The Review Panel articulated the following rationale for its decision to issue the written warning and to prohibit Mr. Cromartie from being on Petitioner's premises during operational hours:

> An eight-year old child disclosed to a medical professional who conducted a Child Medical Examination (CME) that on two separate occasions, Ricky Cromartie, the facility owner's husband, engaged in incidents of inappropriate touching at the facility, a violation of North Carolina General Statute 110-91(10) regarding care

and treatment of children. The child also disclosed consistent information to the Department of Social Services and the Child Abuse/Neglect Consultant. Mr. Cromartie was the sole caregiver present at the facility at the time of the incidents. The child is no longer enrolled.

The Review Panel noted that its decision to take the less severe administrative action of issuing a written warning in lieu of a special provisional license was due to the fact that Mrs. Cromartie "has complied [with] all written request[s] from [the Division]." However, the Review Panel determined that its decision to prohibit Mr. Cromartie from being at the facility during its operational hours should be upheld "as a result of the substantiation of child sexual abuse by the local department of social services" and would remain in place "unless substantiation is overturned."

Petitioner filed a timely petition for a contested case hearing in the Office of Administrative Hearings ("OAH") to challenge this decision and a hearing on the petition was held on 12 July 2011. After hearing the evidence, the Administrative Law Judge ("ALJ") made numerous findings of fact, including the following:

> 39. None of the parents who testified at the hearing in this matter had any concerns about Mr. Cromartie caring for their children. These parents could

not give any reasons why Mr. Cromartie should not be allowed to work at Nanny's Korner[.]

. . . .

43. None of the employees who testified at the hearing in this matter observed or had knowledge of any of the conduct which gave rise to the allegations of sexual abuse by Ricky Cromartie[.]

. . . .

52. Petitioner also kept a communication log on [the minor child]. In her communication logs concerning [the minor child], Petitioner documented that [the minor child's] mother had experienced behavior problems with [the minor child], and documented three incidents in which [the minor child] lied while at Petitioner's facility.

. . . .

69. Petitioner saw no indication, and received no reports of inappropriate touching or sexual misconduct towards children prior to November 6, 2009[.]

. . . .

85. Neither [the minor child] nor [the minor child's] mother testified at the contested case hearing. Neither [the minor child's] elementary school teacher, nor [the minor child's] guidance counselor, nor any one from the Robeson County Department of Social Services testified at the contested case hearing.

In its conclusions of law, the ALJ concluded that:

9. When there is a substantiation of child sexual abuse at a child care facility by a local department of social services, the Division may issue a written warning to the facility, although other more stringent remedies are also available to the Division. N.C. Gen. Stat § 110-105.2(b), (e)[.]

10. Respondent has the authority to permanently remove a substantiated child abuser or neglecter from child care pursuant to N.C. Gen. Stat. § 110-105.2(d).

11. The only issue before the undersigned is whether Respondent acted properly in issuing the written warning to Petitioner's family child care center, and in implementing the Corrective Action plan prohibiting Ricky Cromartie from being on the child care facility's premises while children are in care.

12. While the preponderance of the evidence before me raises serious questions and/or doubts about whether Mr. Cromartie sexually abused [the minor child] at Petitioner's center on November 5, 2009, the undersigned lacks the authority and/or jurisdiction to issue a formal determination on the merits of that substantiation. Review of the DSS' substantiation is located in another forum other than the Office of Administrative Hearings.

Accordingly, based on its findings of fact and conclusions of law, the ALJ determined that "Respondent's decisions to issue a written warning to Petitioner's child care center and to prohibit Petitioner's husband from being [on] the child care

center premises while children are in care, should be AFFIRMED." On or about 12 March 2012, DHHS adopted the ALJ's order as its own Final Agency Decision.[1]

Petitioner then filed a petition in superior court requesting judicial review of DHHS's Final Agency Decision pursuant to N.C. Gen. Stat. § 150B-36. On 9 January 2013, the superior court entered an order in which it concluded the following:

> 9. The Division has the authority to issue a written warning to a facility at which child abuse or neglect has been substantiated by the local department of social services and to "specify any corrective action to be taken by the operator." N.C.G.S. § 110-105.2(b)[.]
>
> 10. The Division also has the statutory authority to permanently remove a "substantiated abuser or neglecter from child care." N.C.G.S. § 110-105.2(d).

---

[1] In 2011, the General Assembly modified the contested case procedure set out in the Administrative Procedure Act ("APA") by amending and repealing numerous statutory provisions contained in Chapter 150B of the North Carolina General Statutes as well as several other statutory provisions affected by those procedures. 2011 N.C. Sess. Law 1678, 1685–97, ch. 398, §§ 15–55. These amendments became effective on 1 January 2012 and apply to contested cases commenced on or after that date. *See* 2011 N.C. Sess. Law 1678, 1701, ch. 398, § 63. However, because Petitioner's contested case was initiated on 21 July 2010, the General Assembly's 2011 modifications to the APA are inapplicable to the present case, so we conduct our review according to the statutory procedures that were in effect at the time Petitioner's contested case was filed with OAH.

11. By statute, substantiations of child abuse or neglect are issued by the local departments of social services throughout the State of North Carolina. *See* N.C.G.S. § 7B-101, *et seq.*

. . . .

13. Local units of government such as Robeson County Department of Social Services are not subject to OAH's jurisdiction because they are not an "agency" as defined by the APA. Therefore, a substantiation of child abuse or neglect is not subject to review in OAH. *See* N.C.G.S. § 150B-2(1a).

14. The Administrative Law Judge and the Agency properly held that the Agency's action was proper and within the Agency's authority as set out in the North Carolina Child Care Act, N.C.G.S. § 110-105.2.

15. The Agency's issuance of the Written Warning was not arbitrary or capricious.

16. The Agency's issuance of the Written Warning was supported by substantial evidence in the whole record.

17. There is credible evidence in the record that Ricky Cromartie was a "substantiated abuser" as set forth in the North Carolina Child Care Act, N.C.G.S. § 110-105.2(d), and as such, the Agency had authority pursuant to statute to prevent him from being on the premises when children are in care.

18. Prohibiting Ricky Cromartie from being on the premises of Petitioner's child

care facility while children are in
care was not arbitrary or capricious.

Based on its findings and conclusions, the superior court affirmed the Final Agency Decision. Petitioner gave timely notice of appeal from the superior court's order.

## II. Jurisdiction

Plaintiff's appeal from the superior court's order lies as of right to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2013). *See also* N.C. Gen. Stat. § 150B-52 (2013).

## III. Analysis

On appeal, Petitioner argues that the superior court erred as a matter of law by concluding that DHHS could rely on the local DSS substantiation of child abuse to support its issuance of a written warning, which prohibited Mr. Cromartie from being on the premises of the facility while children were present under Petitioner's care.

"The North Carolina Administrative Procedure Act governs both trial and appellate court review of administrative agency decisions." *Eury v. N.C. Emp't Sec. Comm'n*, 115 N.C. App. 590, 596, 446 S.E.2d 383, 387 (citation omitted), *appeal dismissed and disc. review denied*, 338 N.C. 309, 451 S.E.2d 635 (1994). "On judicial review of an administrative agency's final decision, the substantive nature of each [issue on appeal]

dictates the standard of review." *N.C. Dep't of Env't & Natural Res. v. Carroll* (*Carroll*), 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004).

Pursuant to N.C. Gen. Stat. § 150B-51, a trial court is authorized to reverse or modify the agency's decision

> if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> > (1) In violation of constitutional provisions;
> >
> > (2) In excess of the statutory authority or jurisdiction of the agency or the administrative law judge;
> >
> > (3) Made upon unlawful procedure;
> >
> > (4) Affected by other error of law;
> >
> > (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
> >
> > (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2011).

"The first four grounds for reversing or modifying an agency's decision . . . may be characterized as 'law-based' inquiries," while "[t]he final two grounds . . . may be

characterized as 'fact-based' inquiries." *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894 (internal citations omitted). "It is well settled that in cases appealed from administrative tribunals, [q]uestions of law receive *de novo* review, whereas fact-intensive issues such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test." *Id.* (alterations in original) (quotation marks and citation omitted).

"Under a *de novo* review, the superior court consider[s] the matter anew[] and freely substitut[es] its own judgment for the agency's judgment." *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (alterations in original) (quotation marks and citation omitted). "Under the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to support the administrative agency's findings and conclusions." *Henderson v. N.C. Dep't of Human Res.*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). "The reviewing court must not consider only that evidence which supports the agency's result; it must also take into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Id.* at 530-31, 372 S.E.2d at 890. However, the "whole record" test

"does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views." *Lackey v. N.C. Dep't of Human Res.*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). Instead, "the reviewing court must determine whether the administrative decision had a rational basis in the evidence." *Henderson*, 91 N.C. App. at 531, 372 S.E.2d at 890.

"As to appellate review of a superior court order regarding an agency decision, the appellate court examines the trial court's order for error of law." *ACT-UP Triangle v. Comm'n for Health Serv. of the State of N.C.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quotation marks and citation omitted). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.* (quotation marks and citation omitted). Here, Petitioner challenges DHHS's statutory authority to issue a written warning and prohibit Mr. Cromartie from being on Petitioner's premises while children were present pursuant to N.C. Gen. Stat. § 110-105.2. Accordingly, we review the

superior court's order to decide if the superior court, under a *de novo* review, erred in affirming the ALJ's order.[2]

Petitioner argues that, in accordance with N.C. Gen. Stat. § 110-105.2, DHHS was required to conduct its own investigation and to independently substantiate whether a child had been abused at Nanny's Korner before issuing a warning letter to Petitioner. For the following reasons, we agree and hold that a plain reading of the pertinent statutes and administrative rules places an affirmative duty on DHHS to independently substantiate abuse before it can issue a warning to a facility and mandate corrective action.

As we apply the pertinent statutory provisions to the present case, we are mindful that "[t]he paramount objective of statutory interpretation is to give effect to the intent of the

---

[2] We note that with the exception of Petitioner's unsupported assertion in its brief that its "due process rights will be severely impacted" as a consequence of DHHS's Final Agency Decision, Petitioner does not bring forward a constitutional challenge to the superior court's order on appeal. Therefore, because Petitioner has not advanced a substantive constitutional argument and because "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant," *see Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005), we lack any basis to engage in a constitutional analysis of the issue raised by Petitioner and instead confine our review to whether a violation of the North Carolina General Statutes—or any administrative rules promulgated pursuant to the General Statutes—occurred.

legislature [and that] [t]he primary indicator of legislative intent is statutory language." *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 560, 589 S.E.2d 179, 181 (2003) (internal citation omitted). "Statutory provisions must be read in context: Parts of the same statute dealing with the same subject matter must be considered and interpreted as a whole." *Id.* (quotation marks and citation omitted). "Statutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law, and harmonized to give effect to each." *Id.* (quotation marks and citation omitted).

Here, the plain meaning of the statutory and administrative language places an affirmative duty on DHHS to independently substantiate abuse, thereby precluding DHHS from treating a local DSS substantiation as dispositive.

The General Assembly established, within DHHS, a special unit—the Child Care Commission—"to deal primarily with violations involving child abuse and neglect in child care arrangements." N.C. Gen. Stat. § 143B-168.5 (2013). The Child Care Commission was created by the General Assembly with the mandate that it "shall make rules for the investigation of reports of child abuse or neglect and for administrative action

when child abuse or neglect is substantiated, pursuant to G.S. 110-88(6a), 110-105, and 110-105.2." *Id.*

Section 110-105.2(b) (2013) of our General Statutes provides:

> When an investigation *pursuant to G.S. 110-105(a)(3)* substantiates that child abuse or neglect did occur in a child care facility, the Department may issue a written warning which shall specify any corrective action to be taken by the operator.

(Emphasis added).[3] Thus, in order to invoke the disciplinary authority conferred by this statute, abuse or neglect must be substantiated in the manner prescribed by N.C. Gen. Stat. § 110-105(a)(3). That section makes clear that it is the responsibility of the Child Care Commission within DHHS to inspect child care facilities upon being notified of abuse and "to determine whether the alleged abuse or neglect has occurred." N.C. Gen. Stat. § 110-105(a)(3) (2013). *See also* N.C. Gen. Stat. § 110-88(6a) (2013) (conferring disciplinary rule making power on the Child Care Commission "when *the Secretary's investigations* pursuant to G.S. 110-105(a)(3) substantiate that child abuse or neglect did occur in the

---

[3] "Specific corrective action required by a written warning . . . may include the permanent removal of the substantiated abuser or neglecter from child care." N.C. Gen. Stat. § 110-105.2(d).

facility" (emphasis added)); 10A N.C. Admin. Code 09.1904(b) ("A written warning specifying corrective action to be taken by the operator of the child care center or home may be issued when the investigation is concluded and *the Division determines* that abuse or neglect occurred . . . ." (emphasis added)). Accordingly, a plain reading of the pertinent statutes and administrative rules requires DHHS to determine or substantiate an accusation of abuse. Any lack of specificity in the statutes concerning the process of substantiation cannot be construed to relieve DHHS of this responsibility.

Importantly, requiring DHHS to independently investigate and substantiate abuse does not undermine the investigative collaboration between DHHS and the local DSS encouraged by other pertinent statutes and administrative rules. *See, e.g.*, 10A N.C. Admin. Code 09.1903(a) ("Reports from law enforcement officers and other professionals, as well as photographs and other investigative tools, may be used as appropriate.") and (c) ("The Division shall share information related to investigations with departments of social services, as appropriate."). However, investigatory collaboration and the sharing of evidence does not, *ipso facto*, absolve DHHS of responsibility for independently determining or substantiating the occurrence of

abuse.    Stated differently, while DHHS may utilize evidence collected by the local DSS in its investigation, DHHS may not treat a local DSS substantiation as dispositive for purposes of discipline.  Here, that seems to be exactly what happened.

The Final Agency Decision indicates that DHHS reduced the administrative action proposed in Ms. Miller's Case Decision Summary from the issuance of a special provisional license to a written warning based on "Petitioner's compliance with the corrective action plan in place at Petitioner's facility." However, "[Mr.] Cromartie was still prohibited from being on the premises of the facility while children were in care, *as a result of the substantiation of child sexual abuse by the local department of social services*."   (Emphasis added.)   Thus, the record indicates that DHHS based its administrative action on the local DSS substantiation, not its own.

Moreover, Conclusions of Law 9 and 12 of the ALJ's decision state:

> 9.    When there is a substantiation of child sexual abuse at a child care facility by a local department of social services, the Division may issue a written warning to the facility, although more stringent remedies are also available to the Division.  N.C. Gen. Stat. § 110-105.2(b), (e)[.]
>
>        . . . .

12. While the preponderance of the evidence before me raises serious questions and/or doubts about whether Mr. Cromartie sexually abused [the minor child] at Petitioner's center on November 5, 2009, the undersigned lacks the authority and/or jurisdiction to issue a formal determination on the merits of that substantiation. Review of the DSS' substantiation is located in another forum other than the Office of Administrative Hearings.

Plainly, the ALJ did not find the evidence of abuse presented at the hearing compelling, yet treated the local DSS substantiation as dispositive. The Superior Court's order also contains a finding indicating that the local DSS substantiation was treated as dispositive by the ALJ:

19. The Administrative Law Judge noted that DSS's substantiation of child abuse against Petitioner's husband is a violation of North Carolina Child Care law, N.C.G.S. § 110-105.2, and that the Division had the authority to issue the Written Warning and to prohibit Petitioner's husband from being present while children were in care *based upon the DSS substantiation* pursuant to that same statute.

(Emphasis added.) The Superior Court's order also concluded that local DSS substantiations could be treated as dispositive by DHHS for purposes of invoking DHHS's disciplinary authority:

9. The Division has the authority to issue a written warning to a facility at

which child abuse or neglect has been substantiated by the local department of social services and to "specify any corrective action to be taken by the operator." N.C.G.S. § 110-105.2(b)[.]

. . . .

14. The Administrative Law Judge and the Agency properly held that the Agency's action was proper and within the Agency's authority as set out in the North Carolina Child Care Act, N.C.G.S. § 110-105.2.

Because we find a clear statutory directive that DHHS independently substantiate abuse before taking administrative action, we hold that these conclusions are errors of law.

Furthermore, we find a statutory interpretation allowing local DSS substantiations to be dispositive before the ALJ particularly troubling on due process grounds where, as here, the local DSS substantiation report was admitted at the OAH hearing for the limited purpose of establishing that a substantiation had occurred:

> [Counsel for DHHS]: And, Your Honor, we're happy to introduce this document for the sole purpose of noting the DSS conclusion, the substantiation of sexual abuse.
>
> THE COURT: Okay.
>
> [Counsel for DHHS]: I have no objection to omitting the hearsay from the document.
>
> THE COURT: Okay. So---

[Counsel for Petitioner]: So we would be redacting, I guess, "[the minor child] stated," et cetera, "[the minor child] described," et cetera, "[the minor child] had," et cetera.

THE COURT: Okay.

[Counsel for DHHS]: Your Honor, I have no objection to that.

THE COURT: Okay. We can take care of that after the hearing. Okay. So Number 9 is allowed for the purpose stated by counsel.

Thus, none of the underlying facts in the report supporting DSS's substantiation were admitted at the hearing and the local DSS representative did not testify. As a consequence, Petitioner was not afforded the ability to challenge the evidence or cross-examine the person who substantiated the abuse. Further, because the ALJ did not have jurisdiction to review the merits of the local DSS substantiation, Petitioner was powerless before the ALJ to challenge an unsupported assertion dispositive of her rights. An independent substantiation of abuse from DHHS, on the other hand, would be subject to review by the ALJ.

Article I, Section 1 of the North Carolina Constitution declares that "[w]e hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with

certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." N.C. Const. art. I, § 1. Article I, Section 19 states that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. As our Supreme Court has noted:

> These fundamental guaranties are very broad in scope, and are intended to secure to each person subject to the jurisdiction of the State extensive individual rights, including that of personal liberty. The term "liberty," as used in these constitutional provisions, does not consist simply of the right to be free from arbitrary physical restraint or servitude, but is "deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. It includes the right of the citizen to be free to use his faculties in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or vocation . . . ."

*State v. Ballance*, 229 N.C. 764, 769, 51 S.E.2d 731, 734 (1949) (citation omitted); *see also Roller v. Allen*, 245 N.C. 516, 518–19, 96 S.E.2d 851, 854 (1957) ("The right to conduct a lawful business or to earn a livelihood is regarded as fundamental."

(quotation marks and citations omitted)). Furthermore, in another context, we have held that a "DSS investigation alone is plainly insufficient to support the loss of liberty that accompanies [placing a substantiated abuser's name on a 'Responsible Individuals List']." *In re W.B.M.*, 202 N.C. App. 606, 619, 690 S.E.2d 41, 50 (2010). Thus, given the documented evidence in the record showing the impact of DHHS's administrative action on Petitioner's livelihood, Petitioner has arguably suffered a deprivation of her liberty interests guaranteed by our State's constitution, necessitating a procedural due process analysis.

However, as noted above, Petitioner has not advanced a constitutional challenge to the trial court's order on appeal, thereby limiting this Court's review to whether a violation of the pertinent statutes and administrative rules has occurred. Nevertheless, we believe the constitutional issue should still affect this Court's *statutory analysis* when attempting to discern legislative intent. "If a statute is reasonably susceptible of two constructions, one of which will raise a serious question as to its constitutionality and the other will avoid such question, it is well settled that the courts should construe the statute so as to avoid the constitutional

question." *Appeal of Arcadia Dairy Farms, Inc.*, 289 N.C. 456, 465, 223 S.E.2d 323, 328 (1976). Because a statutory construction treating a local DSS substantiation as sufficient to support administrative action in this context raises a serious concern with respect to Petitioner's due process rights, we find further support for the statutory interpretation requiring DHHS to independently substantiate claims of abuse before taking administrative action.

## IV. Conclusion

For the foregoing reasons, we hold that the superior court order erred in concluding that DHHS could rely on the local DSS substantiation. Furthermore, because the record evidence reveals that the agency and the court below treated the local DSS substantiation as dispositive, we vacate the superior court's order and remand the matter to the trial court for further remand to DHHS with instructions to conduct an independent investigation to determine whether there is substantial evidence of abuse and for any needed additional administrative action in accordance with the statute.

VACATED AND REMANDED.

Judges ERVIN and DAVIS concur.