IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-840

Filed: 18 August 2020

New Hanover County, No. 15 CVS 1730

MARVIN N. MCFADYEN, Plaintiff,

v.

NEW HANOVER COUNTY; NEW HANOVER COUNTY BOARD OF ELECTIONS; NORTH CAROLINA STATE BOARD OF ELECTIONS; JOSHUA B. HOWARD, in his official capacity; RHONDA K. AMOROSO, in her official capacity; JOSHUA D. MALCOLM, in his official capacity; PAUL J. FOLEY, in his official capacity; and MAJA KRICKER, in her official capacity, Defendants.

Appeal by Plaintiff from order entered 29 March 2018 by Judge Charles H. Henry and from orders entered 12 April 2018 and 26 April 2018 by Judge Joshua W. Willey, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 14 March 2019.

*Shipman & Wright, L.L.P., by W. Cory Reiss, for plaintiff-appellant.*

*Sumrell Sugg, P.A., by Scott C. Hart, for defendant-appellee New Hanover County.*

*Knott and Boyle, PLLC, by W. Ellis Boyle, for defendant-appellee New Hanover County Board of Elections.*

*Attorney General Joshua H. Stein, by Deputy Solicitor General Ryan Y. Park, Special Deputy Attorney General James Bernier, Jr., and Solicitor General Fellow Matt Burke, for the State defendants-appellees.*

MURPHY, Judge.

N.C.G.S. § 163-22(l) requires that any appeal from the State Board of Elections ("SBE") be filed in the Superior Court of Wake County. Failure to comply with this statutory requirement deprives any other court of jurisdiction to hear the dispute. Where a court lacks jurisdiction over a case, any action made by the court related to that case is void ab initio and a nullity, leaving any appeal based on the court's void actions moot. Here, Marvin McFadyen ("McFadyen"), appealed his purported termination as a county director of elections ("county director") by the SBE in the Superior Court of New Hanover County, in contravention of N.C.G.S. § 163-22(l). As a result, the Superior Court of New Hanover County was without jurisdiction, and all of its actions related to the case are void and vacated, rendering McFadyen's appeal moot. We dismiss without prejudice to Defendant's ability to refile in the Superior Court of Wake County.

## BACKGROUND

Plaintiff, McFadyen, was nominated and appointed as County Director of the New Hanover County Board of Elections ("NHCBE") in 2011. The procedures for appointing a county director were established under N.C.G.S. § 163-35 (2014).[1] The General Assembly created a three-step process across three entities for appointing and supervising a county director. First, the county board of elections nominates an eligible individual for the county director position and submits that nomination to the

---

[1] For all relevant times described herein, the statute was N.C.G.S. § 163-35. N.C.G.S. § 163-35 has since been updated and recodified at N.C.G.S. §§ 163A-774-775.

Executive Director of the SBE. Second, the Executive Director issues a letter of appointment. Third, once the new county director is appointed, the county board of elections determines the county director's responsibilities and delegated authority. The county director is then compensated by the county through its Board of County Commissioners. *Id.*

The origins of McFadyen's purported termination began "[i]n the wake of a political shift that occurred in the 2012 elections . . . ." A new governor appointed new members to the SBE who then appointed John Ferrante ("Ferrante") as Chairman of NHCBE in July 2013. McFadyen claims that Ferrante "immediately expressed his personal dislike for" McFadyen and was "openly critical of and condescending toward" him, "including in front of employees whom . . . McFadyen was to oversee and direct . . . ." As a result, McFadyen further alleges that, despite not having received performance evaluations from NHCBE, as was "past practice," NHCBE conducted closed-door interviews with other employees to discuss him and evaluate his performance.

Further, unless marked "confidential," New Hanover County had a policy of automatically making emails to and from county department heads available to the public. During the November 2014 election, military ballots and voter registration applications that were emailed to McFadyen's NHCBE email address were released to the public. These emails should not have been released. McFadyen claims he was unaware "that the county followed an unwritten or informal policy making all

inbound emails to department heads available to the public without a public records request unless they were labeled 'confidential' or otherwise marked for non-dissemination."

After this incident, NHCBE held a closed session regarding McFadyen's employment. Ferrante gave McFadyen the option of resigning and advised him that, if he refused, then NHCBE would begin formal termination proceedings.

To terminate a county director, "the county board of elections may, by petition signed by a majority of the board, recommend to the Executive Director of the [SBE] the termination of the employment of the [county director]." N.C.G.S. §163-35(b) (2014). After receiving the petition, the Executive Director forwards a copy of the petition to the county director facing termination, who may then reply to the petition. *Id.* Finally, upon receiving the county director's reply or the expiration of a set time period,

> the State Executive Director [of the SBE] shall render a decision as to the termination or retention of the [county director]. The decision of the Executive Director of the [SBE] shall be final unless the decision is, within 20 days from the official date on which it was made, deferred by the [SBE]. If the [SBE] defers the decision, then the [SBE] shall make a final decision on the termination after giving the [county director] an opportunity to be heard and to present witnesses and information to the [SBE], and then notify the Executive Director of its decision in writing.

*Id.* As a link in this termination chain, the State Executive Director of the SBE[2] has the initial decision of whether to fire the county director. *Id.* This statute did not contemplate what to do if this link is broken, such as when the Executive Director recuses herself due to a conflict of interest and fails to "render a decision as to the termination or retention of the [county director]." *Id.*

This termination process began after McFadyen declined Ferrante's ultimatum. The NHCBE voted 2-1 to submit a petition to the SBE recommending that McFadyen be terminated from his position as County Director of the NHCBE. In its petition, NHCBE alleged cause for termination based on various reasons including that McFadyen's employment "create[d] substantial and unacceptable risk of liability" for "Employment Practices Liability, the area of law dealing with, sexual harassment; retaliation; discrimination based on sex, race/color or disability; abuse and intimidation, and infliction of emotional distress"; that McFadyen "knowingly failed to meet his duty to safeguard and protect . . . Confidential Voter Information"; and that McFadyen "intended either to deflect responsibility or to mislead the [NHCBE]" about how the Confidential Voter Information was released to the public.

At the time the SBE received the petition recommending termination, Kimberly Strach ("Strach") was the Executive Director of the SBE. She informed the

---

[2] "[T]he [SBE] shall appoint an Executive Director [of the SBE] for a term of four years . . . [who] shall serve, unless removed for cause, until his successor is appointed. Such Executive Director shall be responsible for staffing, administration, execution of the [SBE]'s decisions and orders and shall perform such other responsibilities as may be assigned by the [SBE]. In the event of a vacancy, the vacancy shall be filled for the remainder of the term." N.C.G.S. § 163-27 (2014).

SBE Chairman that she had a conflict of interest that prevented her from acting on the petition. The SBE Chairman sanctioned Strach's recusal, but the statute did not address how to proceed with a termination petition when the Executive Director recuses. In response to this situation and purportedly "to preserve the procedural approach set out by statute," the SBE Chairman appointed the Deputy Director of the SBE, Amy Strange ("Strange"),[3] to act in place of the Executive Director to address the petition for McFadyen's termination.

Strange moved to the next link in the termination chain. Strange sent McFadyen a copy of the petition for termination. McFadyen replied to the petition and denied its allegations. Strange reviewed the petition and McFadyen's responses and purported to issue a decision concluding that there were two grounds for termination. Strange first concluded that McFadyen "fail[ed] to follow State and federal laws and county policies" when he failed "to protect confidential voter information, including voted ballots, from being displayed for public view constitut[ing] an inexcusable breach of public trust and lead[ing] to a lack of confidence in the elections process." She stated that the "County's policies and procedures [timeframe] for safeguarding e-mails with confidential content is at least

---

[3] Strange had been "hired by the [Executive Director]," Strach, to be Deputy Director for Campaign Finance and Operations. She applied for the job via an advertised position through the State Office of Human Resources. Strach hired Strange after she interviewed and accepted an offer. Strange's job included reviewing accounting transactions for compliance with state laws, approving financial transactions on behalf of the agency, ensuring compliance with internal review and internal controls for the SBE, supervising campaign finance staff and operations staff, and serving as a liaison between various state offices.

a decade old, and was in place from the first day that Mr. McFadyen was employed as Elections Director" and that "[i]t would clearly be the responsibility of Mr. McFadyen to appropriately flag items in his own email folders." Second, Strange concluded that McFadyen "provid[ed] false or misleading information regarding a serious breach of State and federal laws . . . ." Acting as though she was the Executive Director of the SBE under the statute, Strange purported to grant the petition on 4 February 2015.

In accordance with his rights under the statute, McFadyen wrote the SBE to challenge Strange's purported decision. He argued that "the delegation of duties to Amy Strange[,]" as a hired employee rather than an appointed member of the SBE, "does not seem to be within the statutory authority of [N.C.G.S. §] 163-35." Over two weeks later, the SBE informed McFadyen that "no deferral will be had and that [McFadyen] can move forward with whatever subsequent legal action [he and his counsel] might find appropriate." The SBE did not have the votes to defer Strange's decision and McFadyen's purported termination was effectively final.

McFadyen began legal action in New Hanover County Superior Court. Asserting claims under both state and federal law, McFadyen sued NHCBE, New Hanover County, and the SBE and its individual members. Defendants jointly filed a notice of removal to the U.S. District Court for the Eastern District of North Carolina on the basis of federal question jurisdiction given McFadyen's claim against the SBE under 42 U.S.C. § 1983. In that claim, McFadyen alleged that the SBE

violated his constitutional right to due process during termination proceedings and sought injunctive relief and attorney fees under 42 U.S.C. § 1988. McFadyen's federal claims were dismissed,[4] and the District Court declined to exercise supplemental jurisdiction over remaining state law claims.

Upon return to the New Hanover County Superior Court, the trial court dismissed McFadyen's claims against New Hanover County for unjust enrichment and conversion. The remaining claims against each respective Defendant were disposed of at summary judgment. The trial court entered orders granting summary judgment in favor of Defendants on all claims. On appeal, McFadyen challenges the trial court's orders dismissing and granting summary judgment in favor of Defendants.

## ANALYSIS

Although McFadyen was a county employee, the county had no legal power to terminate him; that decision rested solely with the SBE. *See* N.C.G.S. § 163-35(b) (2014). There is a statutory procedure for that termination and it expressly identifies when the SBE's action becomes a final agency decision. *Id.* Decisions of the SBE related to the performance of its duties are subject to judicial review exclusively in

---

[4] The U.S. District Court held: "Because [McFadyen] has not pleaded facts demonstrating that the SBE [D]efendants can be held responsible for the publication of false charges that allegedly stigmatized his reputation, [McFadyen's] § 1983 claim, the second claim, fails to state a claim upon which relief can be granted. [[McFadyen's] sixth claim for attorney fees under § 1988 is tied to [[McFadyen's] § 1983 claim, and cannot stand alone. Accordingly, it too must be dismissed." *McFadyen v. New Hanover County*, No. 7:15-CV-132-FL, 2016 WL 183486, at \*6 (E.D.N.C. Jan. 14, 2016).

the Superior Court of Wake County. *See* N.C.G.S. § 163-22(l) (2014) ("Notwithstanding any other provision of law, in order to obtain judicial review of any decision of the [SBE] rendered in the performance of its duties or in the exercise of its powers under this Chapter, the person seeking review must file his petition in the Superior Court of Wake County."). McFadyen seeks judicial review of a decision "rendered in the performance of [SBE's] duties . . . under [Chapter 163]" as this controversy arises out of the purported termination of McFadyen as a county director. *See* N.C.G.S. § 163-35(b) (2014) ("The county board of elections may, by petition signed by a majority of the board, recommend to the Executive Director of the [SBE] the termination of the employment of the county board's director of elections. . . . [T]he State Executive Director shall render a decision as to the termination or retention of the county director of elections.").

McFadyen could have challenged the SBE's action by appealing to the Superior Court of Wake County according to the judicial review process established by law, but he instead filed his *Complaint* in New Hanover County. The failure to exhaust the administrative and judicial review process bars a later collateral attack on the SBE's decision. *Frazier v. N.C. Cent. Univ., ex rel. Univ. of N.C.*, 244 N.C. App. 37, 44, 779 S.E.2d 515, 520 (2015). The law does not permit litigants to challenge a state agency decision by bypassing judicial review and suing the administrative agency and third parties whose actions "happen to stem from decisions of an administrative agency." *Vanwijk v. Prof'l Nursing Servs., Inc.,* 213 N.C. App. 407, 410, 713 S.E.2d 766, 768

(2011). McFadyen's failure to properly appeal through the judicial review process established by statute means the Superior Court of New Hanover County lacked jurisdiction to hear the matter.

McFadyen argues that, under *Nanny's Korner Day Care Ctr., Inc. v. N.C. DHHS*, 264 N.C. App. 71, 825 S.E.2d 34, *app. dism., rev. denied*, 831 S.E.2d 89 (2019) (*Nanny's Korner II*), he was not required to exhaust administrative remedies before filing this action. We disagree.

"When the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the courts." *Jackson ex rel. v. N.C. Dept. of Human Res. Div. of Mental Health, Developmental Disabilities, & Substance Abuse Servs.*, 131 N.C. App. 179, 186, 505 S.E.2d 899, 903-04 (1998). "Nevertheless, the exhaustion of administrative remedies doctrine is inapplicable when the remedies sought are not considered in the administrative proceeding." *Nanny's Korner II,* 264 N.C. App. at 78, 825 S.E.2d at 40. "Under those circumstances, 'the administrative remedy will not bar a claimant from pursuing an adequate remedy in civil court.'" *Id.* (quoting *Johnson v. First Union Corp.*, 128 N.C. App. 450, 456, 496 S.E.2d 1, 5 (1998).

In *Nanny's Korner Care Ctr. v. N.C. DHHS - Div. of Child Dev.*, 234 N.C. App. 51, 758 S.E.2d 423 (2014) (*Nanny's Korner I*), the petitioner appealed a superior court order affirming the final agency decision of the respondent North Carolina Department of Health and Human Services ("DHHS"), in which DHHS issued a

written warning to the petitioner's child care center and prohibited the petitioner's husband from being on the child care center's premises while children were on site. The petitioner contended that the superior court erred in concluding that DHHS could rely on a substantiation of abuse made by a local Department of Social Services ("DSS"), instead of conducting its own independent investigation, to invoke its disciplinary authority under N.C.G.S. § 110-105.2(b). *Id.* at 57, 758 S.E.2d at 427. We vacated the trial court's order and remanded the matter to the trial court for further remand to DHHS with instructions to conduct an independent investigation to determine whether there was substantial evidence of abuse and for any needed additional administrative action in accordance with the statute. *Id.* at 64-65, 758 S.E.2d at 431.

The childcare center then filed an action in superior court, alleging a violation of its due process rights under Article 1, Section 19 of the North Carolina Constitution, and seeking monetary damages. *Nanny's Korner II*, 264 N.C. App. at 75, 825 S.E.2d at 38. The action was dismissed because it fell outside the three-year statute of limitations for constitutional claims. *Id.* at 76, 825 S.E.2d at 38-39. On appeal, the plaintiff contended the exhaustion of administrative remedies doctrine required the plaintiff to exhaust its remedies through the claim under the NCAPA before the plaintiff's right to bring a constitutional claim arose. *Id.* at 78, 825 S.E.2d at 40. We disagreed, holding the statute of limitations was not tolled while the petitioner pursued administrative remedies in *Nanny's Korner I* because monetary

damages were not a remedy available through the NCAPA in that action. *Id.* at 79, 825 S.E.2d at 40.

Here, McFadyen alleges he "has suffered damages stemming from his loss of employment, lost wages, lost opportunities, and stigmatized reputation." Unlike in *Nanny's Korner I*, remedies for those damages–including a hearing, reinstatement to his position, and back pay–are available in an administrative proceeding under the NCAPA in this case. McFadyen's argument thus lacks merit.

"An order is void *ab initio* only when it is issued by a court that does not have jurisdiction. Such an order is a nullity and may be attacked either directly or collaterally, or may simply be ignored." *State v. Sams*, 317 N.C. 230, 235, 345 S.E.2d 179, 182 (1986). "[A] void judgment 'is in legal effect no judgment,' as '[i]t neither binds nor bars any one, and all proceedings founded upon it are worthless.'" *Boseman v. Jarrell*, 364 N.C. 537, 557, 704 S.E.2d 494, 507 (2010) (quoting *Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 90, 92 S.E.2d 673, 678 (1956)). The trial court's orders in this case were issued without jurisdiction where under N.C.G.S. § 163-22(l) only the Superior Court of Wake County had jurisdiction to hear the matter; therefore, the orders are void and without legal effect.

> If there be a defect, e. g., a total want of jurisdiction apparent upon the face of the proceedings, the court will of its own motion, stay, quash, or dismiss the suit. This is necessary to prevent the court from being forced into an act of usurpation, and compelled to give a void judgment . . . so, (out of necessity) the court may, on plea, suggestion,

motion, or *ex mero motu*, where the defect of jurisdiction is apparent, stop the proceedings.

*Stroupe v. Stroupe*, 301 N.C. 656, 661, 273 S.E.2d 434, 438 (1981) (citing *Lewis v. Harris*, 238 N.C. 642, 646, 78 S.E.2d 715, 717-18 (1953)) (internal marks omitted). We vacate the orders of the trial court due to the trial court lacking jurisdiction over this dispute. Since the underlying orders are vacated, we dismiss this appeal.

## CONCLUSION

N.C.G.S. § 163-22(l) requires any appeal taken from a decision of the SBE to be filed in the Superior Court of Wake County. McFadyen's failure to comply with this statutory requirement means the Superior Court of New Hanover County, where McFadyen filed his appeal, was without jurisdiction. The trial court's orders were void ab initio because the trial court did not have jurisdiction over the dispute; therefore, we vacate the trial court's orders in this case and dismiss this appeal.

VACATED AND DISMISSED.

Judge COLLINS concurs.

Judge DIETZ concurring with separate opinion.

DIETZ, Judge, concurring.

There is a lot going on in this case, all of which can be traced back to the General Assembly's failure to anticipate a conflict of interest by the director of the State Board of Elections. The legislature later amended the statute and inserted a fix. But that fix does not answer all the messy questions about whether the State Board, in this case, complied with the statute that existed at the time. One thing is certain, however—these are questions of statutory law, not contract law.

McFadyen was terminated by the State Board of Elections through a statutory termination process. That decision unquestionably was a "dispute between an agency and another person that involves the person's rights, duties, or privileges" and thus is subject to the Administrative Procedure Act. N.C. Gen. Stat. § 150B-22(a). The General Assembly can exempt agency decisions from APA review and, indeed, it has done so with some decisions of the State Board of Elections. *See id.* § 150B-1(c)(6) (repealed 2018).

But not this one. Moreover, the statute governing termination of a county director carefully identifies when, in the various possible outcomes, the decision of the State Board becomes a "final" agency decision. *Id.* § 163-35(b). That language has special meaning in the APA context and the General Assembly's use of that particular language reinforces that our legislature intended for these decisions to be subject to APA review. Likewise, the General Assembly provided that "judicial review" of any

decision by the State Board must occur in Wake County Superior Court. *Id.* § 163-22(l). As with the reference to a "final" agency decision, the use of the term "judicial review," which has a special meaning in the administrative context, suggests that the General Assembly believed decisions of the State Board were subject to settled principles of administrative and judicial review.

McFadyen's assertion that he can bypass this judicial review process through a civil breach-of-contract action would throw the State Board's termination procedure into chaos by removing the finality that the General Assembly created in the process. Under McFadyen's reasoning, if aggrieved county employees subject to this statutory termination process are unhappy with the agency decision, they need not address the issue immediately through judicial review. They can wait years—as long as the statute of limitations for their contract claims provides—and then sue both the State and the county to litigate the State's (not the county's) actions. This sort of litigation, as this case demonstrates, can stretch on for long after that. The General Assembly required timely administrative and judicial review of these impactful termination decisions precisely because they are too important to delay for years, while scheduled elections continue to take place.

And there is yet another wrinkle. With statutory law, one cannot argue "no harm, no foul." Here, for example, McFadyen reasons that, as a matter of statutory law, the deputy director of the State Board could not conduct the statutory review

2

process because the statute says only the director can do it. Thus, he argues, his termination was improper because the State Board failed to precisely follow the requirements of the statute.

But that is not how contract law works. In contract law, you are not always entitled to *exactly* what the contract provides. You are entitled to the benefit of the bargain. *First Union Nat. Bank of N. Carolina v. Naylor*, 102 N.C. App. 719, 725, 404 S.E.2d 161, 164 (1991). That is why contract law examines questions such as whether there has been a *material* breach, whether there was *substantial* performance of the contract's terms, and so on. *See, e.g.*, *Cator v. Cator*, 70 N.C. App. 719, 722, 321 S.E.2d 36, 38 (1984).

In other words, the failure of the State to follow the precise letter of the law might not equate to a breach of the contract by the county. Here, for example, the director of the State Board had an obvious conflict of interest—she was once in a dating relationship with McFadyen that ended badly and there was evidence that McFadyen threatened to kill her. The deputy director stepped in to eliminate this conflict.

What the State Board did is certainly closer to the spirit of the parties' bargain than having an official whom McFadyen allegedly harassed and threatened handle the matter instead. And from there, all the impartial layers of review created by statute still were present. The members of the State Board had the opportunity to

3

review the deputy director's decision, and McFadyen had the opportunity to challenge the Board's final decision through further administrative and judicial review. In short, even if McFadyen had a common law contract right to be terminated only through the statutory review process, a violation of that statute would not necessarily mean there was a breach of contract.

All of these complications underscore why this isn't a contract case. The statutory procedures that govern termination of state employees are complex and often exceedingly bureaucratic. Our General Assembly created these administrative procedures and layers of judicial review precisely because that statutory process does not lend itself to review under traditional, civil breach-of-contract principles in a separate lawsuit years later.

Thus, the issues raised in this case should have been pursued through the APA and ultimately brought before the Wake County Superior Court as a challenge to the State Board's final agency decision—not as a civil breach-of-contract case in New Hanover County Superior Court. Accordingly, the trial court properly dismissed the contract claims because they are an impermissible attempt to bypass mandatory judicial review required by statute. That judicial review process also afforded McFadyen ample due process and an opportunity to rebut the allegations contained in the petition from the county board of elections. Thus, the trial court properly dismissed the accompanying due process claims asserted in this action as well.